# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 14-51160

In re:  MIGUEL A. PAREDES,

Movant

United States Court of Appeals
Fifth Circuit

**FILED**

October 25, 2014

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:05-CV-870

Before JOLLY, SMITH, and OWEN, Circuit Judges.

PER CURIAM:*

Miguel Paredes is scheduled to be executed on Tuesday, October 28, 2014. On Saturday, October 18, 2014, ten days before his scheduled execution, he filed in the federal district court a "Motion for Relief from Judgment Pursuant to Rule 60 of the Federal Rules of Civil Procedure and Stay of Execution." The federal district court dismissed the Rule 60(b) motion without prejudice for want of jurisdiction and transferred the motion to this court, citing 28 U.S.C. § 1631. The district court simultaneously denied the motion for stay of execution and denied a certificate of appealability (COA) on all claims. Paredes has applied to this court for a COA and in the alternative, has filed a motion for an order authorizing consideration of a second petition for

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

writ of habeas corpus under 28 U.S.C. § 2244. He seeks a stay of his execution. We deny the requested relief.

Certain claims asserted in Paredes's Rule 60(b) motion must be construed as successive habeas claims. These claims do not rely on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable, or on facts that could not have been discovered previously through the exercise of due diligence.[1] Other of Paredes's contentions in his Rule 60(b) motion are not successive because they assert a defect in the integrity of the federal habeas proceedings.[2] However, Paredes has not overcome the limitation within Rule 60(b) that requires a motion to be made within a reasonable time, if not governed by the more specific one-year deadline,[3] and the requirement of the Supreme Court's decisions that there must be extraordinary circumstances to justify the reopening of a final judgment.[4] To the extent that Paredes asserts that his federal habeas counsel had a conflict of interest because he also served as state habeas counsel, Paredes waited until thirty months after the Supreme Court's decision in *Martinez v. Ryan*,[5] and until seventeen months after the Supreme Court's decision in *Trevino v. Thaler*,[6] to assert the conflict of interest he contends arose as a consequence of those decisions. Paredes's Rule 60(b) motion was not filed within one year after the district court's 2007 final judgment denying habeas relief. In any event, it was not filed within a reasonable time after *Martinez* and *Trevino* provided Paredes grounds for

---

[1] *See* 28 U.S.C. § 2254.

[2] *See Gonzalez v. Crosby*, 545 U.S. 524, 532 (2005).

[3] *See* FED. R. CIV. P. Rule 60(b)-(c).

[4] *See Gonzalez*, 545 U.S. at 535.

[5] 132 S.Ct. 1309 (2012).

[6] 133 S.Ct. 1911 (2013).

asserting that his federal habeas counsel had a conflict of interest that precluded him from raising, for the first time in a federal habeas proceeding, a claim that trial counsel was ineffective in failing to discover or present mitigation evidence during the penalty phase of Paredes's 2001 capital murder trial. Even were Paredes's Rule 60(b) motion timely, the change in the law that the Supreme Court's decisions effectuated in *Martinez* and *Trevino* does not constitute extraordinary circumstances.[7]

# I

Paredes received a death sentence for his participation in the murder of three people. Our court has previously considered an application for habeas relief filed by Paredes.[8] We briefly recount some of the facts underlying his conviction that were set forth in our last opinion in this case:

> Paredes, John Saenz, and Greg Alvarado, who were all members of the Hermanos Pistoleros Latinos gang, anticipated a confrontation regarding an illegal drug transaction and allegedly armed themselves, lay in wait, then shot and killed rival gang members Adrian Torres, Nelly Bravo, and Shawn Cain inside Saenz's home. The victims were slain within seconds of one another. Paredes was charged with murdering more than one person during the same criminal transaction under the Texas capital murder statute. . . . At trial, a witness testified that Paredes admitted to shooting Bravo, and other witnesses testified that Paredes remained silent when, in Paredes's presence, John Saenz recounted that Paredes had shot both Bravo and Cain. One witness, Eric Saenz, the brother of John Saenz, testified that after John Saenz, in Paredes's presence, had described in some detail how he, John Saenz, shot Torres, how Paredes shot Bravo in the head, and how Paredes then shot Cain, Paredes stated to Eric Saenz that Eric "should have been there, that [Eric] would have had some fun." Medical evidence was consistent with testimony that Paredes was the shooter in the deaths of Bravo and Cain but

---

[7] *See generally Gonzalez*, 545 U.S. at 536-38.

[8] *Paredes v. Thaler*, 617 F.3d 315 (5th Cir. 2010); *Paredes v. Quarterman*, 574 F.3d 281 (5th Cir. 2009).

not Torres. There was direct evidence that Paredes was in John Saenz's home at the time of the killings and assisted in cleaning blood off the floor and walls of the home and in disposing of the bodies afterwards. There was also strong circumstantial evidence that Paredes was present during the killing of each of the three decedents, and that at a minimum, he aided or attempted to aid Saenz in carrying out the plan to kill these individuals.[9]

A jury found Paredes guilty of capital murder in October 2001. At the conclusion of the penalty phase of the trial, and in accordance with the jury's answer to the Texas special issues, the state trial court sentenced Paredes to death that same month. On direct appeal, the Texas Court of Criminal Appeals (TCCA) affirmed Paredes's conviction and death sentence.[10] Paredes did not seek relief from the United States Supreme Court at that time.

Paredes then pursued habeas relief in state court in November of 2003. When relief was denied, he sought habeas relief in federal court. As our prior opinions reflect, we affirmed the district court's denial of habeas relief in Paredes's original federal habeas proceedings.[11] The Supreme Court denied Paredes's petition for writ of certiorari in 2011.[12] No further proceedings have occurred in state or federal court until October 2014.

In the present proceedings, Paredes contends that his state habeas counsel was ineffective regarding a claim that trial counsel was ineffective in failing to discover and present mitigation evidence during the penalty phase of the trial. Paredes further contends that because his state habeas counsel was also his federal habeas counsel in his original federal habeas proceedings, his federal habeas counsel had a conflict of interest. The motion filed in the federal

---

[9] *Paredes*, 617 F.3d at 317.

[10] *Paredes v. State*, 129 S.W.3d 530 (Tex. Crim. App. 2004).

[11] *Paredes v. Thaler*, 617 F.3d 315 (5th Cir. 2010); *Paredes v. Quarterman*, 574 F.3d 281 (5th Cir. 2009).

[12] *Paredes v. Thaler*, 131 S.Ct. 1050 (2011).

No. 14-51160

district court that initiated the present proceedings, and the filings in our court presently under consideration were submitted by new counsel that Paredes retained in 2014.

More specifically, Paredes's October 2014 Rule 60(b) motion for relief from the federal district court's 2007 judgment asserts that although his state habeas counsel, Michael Gross, had included a claim in the state habeas petition that his trial counsel was ineffective in failing to discover and present mitigating evidence during the punishment phase of Paredes's trial, this claim was expressly waived by Paredes, in open court, at the state habeas hearing after Paredes had directed Gross not to pursue it. Paredes now contends that Gross should have been aware of circumstances that would have raised doubt as to Paredes's competency to abandon this aspect of his ineffective-assistance-of-counsel claim made in state habeas proceedings and that Gross was therefore ineffective as state habeas counsel. Paredes contended in his Rule 60(b) motion in federal district court that his waiver of this part of his state habeas claim violated Due Process. Paredes further contended in the Rule 60(b) motion that had the federal district court originally appointed, in 2006, someone other than Gross as federal habeas counsel, his federal habeas counsel could have further developed the ineffective assistance of trial counsel claim and argued that Gross's deficiency during the state habeas hearing constituted cause to excuse the fact that the new mitigation evidence and the mitigation claim had not been exhausted in state court. Paredes's Rule 60(b) motion to the district court asserted that alternatively, had the federal district court appointed counsel other than Gross, that counsel could have asked the district court to stay proceedings to allow a return to state court to exhaust the new mitigation evidence claim. Paredes contends that Gross was precluded from making these arguments in the original federal habeas proceeding because a significant conflict of interest exists when an attorney must argue

that his representation at an earlier stage of litigation (in this case, the state habeas proceedings) was ineffective.

The district court construed Paredes's Rule 60(b) motion as asserting eight claims, and the district court denied relief on multiple grounds.[13]  The district court held that the Rule 60(b) motion was untimely, even assuming that Paredes's express waiver in his state habeas proceeding of the ineffective-assistance-of-trial-counsel claim as to mitigation evidence was not valid.[14]  The district court reasoned that at least by the time that state habeas counsel filed the state habeas petition in 2003, or during the November 2004 state habeas hearing, Paredes knew that he had an ineffective-assistance-of-trial-counsel claim as to mitigating evidence.[15]

As to the validity of the waiver that Paredes made in open court at the state habeas hearing, the district court concluded that nothing in the record or in Paredes's October 2014 motion casts legitimate doubt as to Paredes's mental competence or intelligence on the date of the November 2004 state habeas hearing.[16]  The district court further concluded that during the subsequent ten years before Paredes filed the 2014 motion for relief from judgment, the medical records reflect that Paredes was fully capable of logical, rational thought and suffered no debilitating effects from dysthymic disorder.[17]  The district court's order sets forth considerable detail regarding Paredes's

---

[13] Order Dismissing Rule 60(b) Motion and Denying Motion for Stay of Execution at 8-10, *Paredes v. Stephens* (No. SA-05-CA-870-FB) (W.D. Tex. Oct. 23, 2014).

[14] *Id.* at 12-15.

[15] *Id.* at 12.

[16] *Id.* at 12-13.

[17] *Id.* at 13.

condition and the lack of any grounds for contending that his waiver was ineffective due to mental illness or mental incompetence.[18]

The district court also concluded that to the extent that Paredes's Rule 60(b) motion challenged the district court's prior denial of habeas corpus relief in the 2007 final judgment, the motion was outside the scope of a Rule 60(b) motion and was in substance a successive habeas corpus petition.[19]

Although the district court concluded that the merits of Paredes's claim that he was entitled to a new trial on the death penalty issue because of trial counsel's alleged ineffective representation in failing to investigate and present mitigation evidence were not properly before the district court, the court nevertheless addressed the merits.[20] In considering whether Paredes's motion had established the elements of a *Strickland* claim, the district court detailed the mitigation evidence on which the motion relied.[21] The district court concluded that in light of the evidence presented by the prosecutor to persuade the jury to find facts leading to the imposition of the death penalty, "there is no reasonable probability that, but for the failure of petitioner's trial counsel to introduce any of the new evidence identified in the affidavits of petitioner's brother, sister, former girlfriend, and family friends, the outcome of the punishment phase of petitioner's capital murder trial would have been any different."[22]

The district court also noted that Paredes did not offer any evidence indicating that, at the time of trial, trial counsel were unaware of the

---

[18] *Id.* at 22-24.

[19] *Id.* at 15-16.

[20] *Id.* at 16-24.

[21] *Id.* at 19.

[22] *Id.*

mitigating facts set forth in the affidavits submitted in 2014 in support of Paredes's motion.[23]   The district court observed that it was "quite possible petitioner's trial counsel were well aware," from other sources, of the information contained in the 2014 affidavits.[24]   The district court also noted that the state trial judge was the same judge who presided over the state habeas proceedings, and the state habeas record reflects that this judge recalled that Paredes's trial counsel had relayed to the judge that Paredes told his trial counsel that he did not want his family to testify at the punishment phase of the trial.[25]   The federal district court's decision on the Rule 60(b) motion then discussed the decisions of this court that have considered a client's objection to the presentation of certain types of mitigating evidence and whether an attorney was ineffective for acceding to the client's directive not to present such evidence.[26]

We note that in one of the 2014 affidavits that Paredes submitted to the federal district court, it is suggested that Paredes told his trial counsel not to allow his family to testify during the penalty phase because Paredes feared that his family would be harmed by gang members if they took the stand.[27] However, no such claim was argued in the motion and briefing that Paredes filed in the federal district court, and no such claim has been presented in the briefing or application to this court.   The only basis on which Paredes has challenged his express waiver, in the state habeas proceedings, of the ineffective-assistance-of-trial-counsel claim regarding mitigation evidence is

---

[23] *Id.* at 20.

[24] *Id.*

[25] *Id.* at 20-21.

[26] *Id.* at 21-22.

[27] Newberry Aff. at 1.

No. 14-51160

Paredes's assertion that his express waiver was not valid because he was mentally ill or mentally incompetent.

The district court's order states that "[t]his Court concludes after an independent, de novo, review, that petitioner's new ineffective assistance claim fails to satisfy either prong of *Strickland* analysis."[28] The district court's order also details Paredes's medical records and concludes that there were no facts that should have put Paredes's state habeas counsel on notice of a need for further inquiry into Paredes's competence to decide to waive one aspect of his ineffective-assistance-of-trial-counsel claim.[29]  Paredes *did* pursue other ineffective-assistance-of-trial-counsel claims in both state and federal courts, as our prior opinions addressing the claims in Paredes's original federal habeas proceeding reflect.[30]

The federal district court's October 2014 order additionally considered, then denied, Paredes's motion for a stay of execution.[31]  The order also discussed the requirements for granting a COA and denied a certificate.[32]

We are largely in agreement with the district court's analysis and resolution of Paredes's October 2014 motion.  We likewise deny relief.  In his application to this court, Paredes only cursorily addresses the district court's

---

[28] Order Dismissing Rule 60(b) Motion and Denying Motion for Stay of Execution at 22, *Paredes v. Stephens* (No. SA-05-CA-870-FB) (W.D. Tex. Oct. 23, 2014).

[29] *Id.* at 22-24.

[30] *Paredes v. Quarterman*, 574 F.3d 281, 284 (5th Cir. 2009) (ineffective assistance claims based on (1) failure to make Confrontation Clause objections; (2) failure to object to the state's purportedly untimely request for a jury shuffle; (3) failure to object to a jury instruction that did not ensure juror unanimity; (4) failure to object to mitigation instruction because instruction did not require state to prove lack of mitigating circumstances beyond a reasonable doubt).

[31] Order Dismissing Rule 60(b) Motion and Denying Motion for Stay of Execution at 25-26, *Paredes v. Stephens* (No. SA-05-CA-870-FB) (W.D. Tex. Oct. 23, 2014).

[32] *Id.* at 27-30.

No. 14-51160

conclusions that Paredes's Rule 60(b) motion was untimely. Paredes cites no authority that would support an argument that the district court abused its discretion in holding that the Rule 60(b) motion was not filed within a reasonable time. Nor does Paredes address the district court's conclusion that he failed to show extraordinary circumstances that could give rise to relief under Rule 60(b). To the extent that Paredes's claim constitutes a successive petition, it must be denied, and no grounds exist for authorizing a second, successive petition under 28 U.S.C. § 2244.

## II

The first question that must be resolved is whether Paredes's motion in the district court was, in whole or in part, a successive federal habeas petition within the meaning of 28 U.S.C. § 2244. The district court's jurisdiction and our jurisdiction over a habeas petition challenging a state court conviction or sentence are constrained by the Antiterrorism and Effective Death Penalty Act (AEDPA).[33] Congress has directed that a claim presented in a second or successive application under § 2254 that was not presented in a prior application shall be dismissed unless

> (A) the applicant shows that the claim relies on a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
> (B)(i) the factual predicate for the claim could not have been discovered previously through the exercise of due diligence; and
>
> (ii) the facts underlying the claim, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.[34]

---

[33] Pub. L. No. 104-132, 100 Stat. 1214.

[34] 28 U.S.C. § 2244(b)(2).

10

No. 14-51160

It is undisputed that Paredes's claim that his trial counsel and his state habeas counsel were ineffective regarding mitigation evidence was not presented in a prior federal habeas application. All of the facts on which Paredes relies could have been discovered previously through the exercise of due diligence. The mitigation evidence that Paredes says should have been presented to the jury is in the nature of historical facts that were readily available to Paredes, if not within his own personal knowledge. The medical records on which Paredes relies in claiming that he was mentally ill or mentally incapacitated were all in existence and accessible prior to the filing in 2006 of the federal habeas petition.

Paredes does not cite any new rule of constitutional law made retroactively applicable to cases on collateral review by the Supreme Court on which he relies. The Supreme Court's decisions in *Martinez* and *Trevino* held that state habeas counsel's ineffectiveness in raising a claim in the first collateral state proceeding that trial counsel was ineffective may excuse a procedural default of an ineffective-assistance claim when the claim was not properly presented in state court due to an attorney's errors in an initial-review collateral proceeding.[35] These decisions changed the law as it existed when the federal district court issued its 2007 final judgment denying Paredes habeas relief. When Paredes brought his first federal habeas petition, the Supreme Court's decision in *Coleman v. Thompson*[36] held that because "[t]here is no constitutional right to an attorney in state post-conviction proceedings . . . a petitioner cannot claim constitutionally ineffective assistance of counsel in

---

[35] *See Trevino v. Thaler*, 133 S. Ct. 1911, 1921 (2013); *Martinez v. Ryan*, 132 S. Ct. 1309, 1313 (2012).

[36] 501 U.S. 722, 752 (1991).

11

such proceedings."[37]   The subsequent decisions in *Martinez* and *Trevino* created a limited exception to the rule emanating from *Coleman* that ineffective assistance of counsel in state habeas proceedings could not be raised in a federal habeas proceeding.  However, the holdings in *Martinez* and *Trevino* were limited to the determination that ineffective assistance of counsel in the first collateral proceeding regarding ineffective assistance of trial counsel could excuse failure to exhaust the ineffective-assistance-of-trial-counsel claim in state court.[38]  Neither *Martinez* nor *Trevino* held that a conflict of interest can arise if state habeas counsel is also the sole counsel in the federal habeas proceeding or that if such a conflict of interest existed, it could serve as a basis for habeas relief.

However, the most important considerations in our analysis of whether Paredes's motion contained a successive claim are twofold.  The first is that the Supreme Court has not made either *Martinez* or *Trevino* retroactive to cases on collateral review, within the meaning of 28 U.S.C. § 2244.  "[A] new rule is not made retroactive to cases on collateral review unless the Supreme Court holds it to be retroactive."[39]  The second dispositive consideration is that the decisions in *Martinez* and *Trevino* were not based on a rule of constitutional law but on statutory rights.[40]  Paredes is therefore unable to rely on a new and retroactive rule of constitutional law.  To the extent that Paredes challenges

---

[37] *Id.*

[38] *Martinez*, 132 S. Ct. at 1320 ("Our holding here addresses only the constitutional claims presented in this case, where the State barred the defendant from raising the claims on direct appeal."); *Trevino*, 133 S. Ct. at 1921 ("[W]here, as here, state procedural framework, by reasons of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal, our holding in *Martinez* applies . . . .").

[39] *Tyler v. Cain*, 533 U.S. 656, 663 (2001) (internal quotation marks omitted).

[40] *Martinez*, 132 S. Ct. at 1319-20.

No. 14-51160

the denial of habeas relief, his motion must be construed as a successive petition and must be dismissed.

## III

In his application in our court, Paredes proceeds directly to his argument that he has a viable *Strickland* claim that his trial counsel provided ineffective assistance in failing to discover and present mitigation evidence at the penalty phase of his 2001 trial and that his state habeas counsel was ineffective in 2004 with regard to the mitigation evidence claim. Paredes's application in our court devotes virtually no argument to the jurisdictional issues that the district court correctly recognized and resolved. The district court did not have jurisdiction over Paredes's successive claims, and they were properly dismissed. Because parts of Paredes's Rule 60(b) motion in the district court included a successive claim, he is not entitled to a COA from this court as to that claim.

But even assuming that Paredes could surmount the procedural bar imposed by AEDPA, the new evidence proffered in his October 2014 filing would not entitle him to relief under *Strickland*.

## A

Paredes's claim that trial counsel was ineffective in failing to discover and present mitigating evidence at the penalty phase was not pursued in the state courts, and therefore, the claims have not been "adjudicated on the merits in State court proceedings" within the meaning of § 2254(d).[41] Nevertheless,

---

[41] 28 U.S.C. § 2254(d) (An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.").

under 28 U.S.C. § 2254(b)(2), "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."[42]  Because the claims have not been "adjudicated on the merits in State court proceedings," the § 2254(d) deferential standard of review does not apply.  Rather, a federal court's review of an unexhausted claim that counsel was deficient is reviewed de *novo*.[43]

The seminal decision in *Strickland v. Washington* contains two elements necessary to establish ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.[44]

To establish constitutionally deficient performance, a defendant must show that counsel's representation "fell below an objective standard of reasonableness" based on "prevailing professional norms."[45]  We judge the

---

[42] 28 U.S.C. § 2254(b)(2); *see Nobles v. Johnson*, 127 F.3d 409, 423 (5th Cir. 1997) ("The AEDPA amended 28 U.S.C. § 2254(b) to allow a federal court to deny an application on the merits, 'notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.'  We note that amended § 2254(b)(2) is permissive ('[a]n application . . . may be denied . . .').  The district court, after finding Nobles's claim procedurally defaulted, found in the alternative that his claim would not have succeeded on the merits.  We review the district court's resolution of this mixed question of law and fact de novo.").

[43] *See Porter v. McCollum*, 558 U.S. 30, 39 (2009).

[44] *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

[45] *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (quoting *Strickland*, 466 U.S. at 688) (internal quotation marks omitted).

reasonableness of counsel's conduct based on the particular facts at the time of the conduct.[46] "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."[47]

To establish prejudice, the second part of the *Strickland* test, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."[48] In the context of a defendant who argues that his trial counsel "fail[ed] to investigate and present sufficient mitigating evidence during the penalty phase of his trial,"[49] the defendant must show "a reasonable probability that a competent attorney, aware of [the available mitigating evidence], would have introduced it at sentencing, and that had the jury been confronted with this . . . mitigating evidence, there is a reasonable probability that it would have returned with a different sentence."[50] "In assessing prejudice, we reweigh the evidence in aggravation against the totality of available mitigating evidence."[51]

Trial counsel for Paredes did not affirmatively present any witnesses during the punishment phase of the trial. They did cross-examine witnesses called by the prosecution. Evidence was adduced in the punishment phase that favored Paredes on the mitigation question. Jesus Hernandez, Paredes's

---

[46] *Strickland*, 466 U.S. at 690.

[47] *Id.*

[48] *Id.* at 694; *Wiggins*, 539 U.S. at 534.

[49] *Wong v. Belmontes*, 558 U.S. 15, 16 (2009) (per curiam).

[50] *Id.* at 20 (alteration in original) (quoting *Wiggins*, 539 U.S. at 535-36) (internal quotation marks omitted).

[51] *Wiggins*, 539 U.S. at 534.

supervisor when he was paroled from the Texas Youth Commission (TYC), testified that Paredes quickly completed the TYC program and his required community service.[52]  He also noted that when Paredes entered TYC custody, his girlfriend, who was approximately fourteen years old, was three months pregnant.[53]  Hernandez stated that Paredes worked to support the mother and child but at one point lost his job.[54]  Paredes also spoke to Hernandez about obtaining visitation rights to see his child more frequently.[55]  On cross-examination, Hernandez said that Paredes was not threatening and was respectful during his interactions in the parole office.[56]

Dr. Catherine King, an associate psychologist with the TYC, also testified.[57]  She performed a psychological evaluation of Paredes on February 8, 1998.[58]  She testified that on a test of nonverbal intelligence, Paredes scored an 89, at the high end of the low range, meaning that he did not suffer from mental retardation.[59]  She diagnosed Paredes with a conduct disorder.[60]  She also told the jury that he suffered from anxiety due to his incarceration and struggled with trusting others and controlling his anger.[61]  She noted that Paredes tried to support his pregnant girlfriend and his family by working in

---

[52] 20 RR 91, 93.

[53] 20 RR 93.

[54] 20 RR 93.

[55] 20 RR 110.

[56] 20 RR 108.

[57] 20 RR 111.

[58] 20 RR 112.

[59] 20 RR 116-17.

[60] 20 RR 117.

[61] 20 RR 118.

a tire shop.[62]  Paredes had informed Dr. King that he began drinking alcohol at age eight and smoking marijuana at thirteen, and she diagnosed him with marijuana and alcohol abuse.[63]

The State also introduced Paredes's TYC records and Dr. King's report.[64] These records largely corroborate Dr. King's and Hernandez's testimony.  They reflect that Paredes had a good relationship with his parents, even though he disobeyed them, but that his relationship with his brothers was strained because they disagreed with his illegal acts.[65]  The records also show that his parents lacked disciplinary skills.[66]

Trevino, who was one of Paredes's two counsel at trial, presented closing argument in the punishment phase.  Trevino urged the jury to review Paredes's TYC records and noted that they showed that Paredes was one of twenty children and lived in a gang-filled neighborhood.[67]  Trevino reminded the jury that the family was providing alcohol to Paredes by age eight and that he joined a gang by age twelve for protection because he had no other choice for survival.[68]  Trevino argued to the jury in the context of the mitigation question that Paredes had a two-year-old son and encouraged the jury to "break the circle of violence" by making sure Paredes's son would have a father.[69]

Using recently procured affidavits, Paredes points to three areas of mitigating evidence that trial counsel allegedly failed to procure and introduce

---

[62] 20 RR 114.

[63] 20 RR 118.

[64] 24 RR 1-437 (State's Exs. 202, 203).

[65] 24 RR 28, 36.

[66] 24 RR 36.

[67] 21 RR 16-17.

[68] 21 RR 17.

[69] 21 RR 22-23.

during punishment.    First, Paredes points to the fact that he grew up surrounded by gang violence.    Second, he points to the lack of support he received from his parents.    And finally, he contends that he had a history of mental illness from childhood onwards.[70]

Contrary to his assertion, evidence of Paredes's upbringing in gang-infested areas was placed before the jury.    Paredes contends that the jury did not know that when he was young, his family moved from Chicago to Mexico because of a gang war.    It does not appear that the reason for the move is in the state trial record.[71]    Paredes also asserts that the jury was unaware that when he moved to San Antonio around the age of seven, he was confronted with more significant gang violence.[72]    But at least some evidence of this nature was presented to the jury.    Hernandez testified that the TYC records showed that Paredes joined a gang around the age of twelve or twelve and a half.[73]    Dr. King corroborated this testimony.[74]    His counsel also made much of the gang problem in San Antonio during closing argument.    He noted that Paredes's family left Mexico and began living in San Juan Courts, a "gang infested neighborhood."[75]    Trial counsel also told the jury that a twelve-year old child in the San Juan neighborhood would "face[] the choice of getting beaten every day just going to school or joining a gang for protection."[76]    Paredes asserts that the jury did not know that he was run over by gang members in a car, but his

---

[70] Paredes App. for COA at 27-28.

[71] 20 RR 114.

[72] Paredes App. for COA at 27.

[73] 20 RR 106-07

[74] 20 RR 115-16.

[75] 21 RR 17.

[76] 21 RR 26.

counsel expressly mentioned this during closing argument.[77]  In sum, although the jury was unaware of the gang issues that Paredes encountered during his first five years of life, there was considerable evidence of his experience with gangs from age seven to the time of his trial, when he was nineteen years old.

Paredes contends that the 2014 affidavits show that he received little support from his parents and that the jury was unaware of this fact.  But the jury heard several pieces of evidence on this issue.  Hernandez, the parole officer, testified that he only met Paredes's mother but not his father.[78]  He further stated that the mother and a brother approached Hernandez complaining that Paredes was staying out late and hanging around gang members.[79]  His TYC records show that his parents were older and therefore lacked disciplinary skills.[80]  However, another portion of the reports also noted that "[h]e has the support of his parents and older siblings who are caring and concerned for his well-being."[81]  Finally, counsel remarked during closing that that Paredes was the youngest of twenty children, so he "ran loose" and his parents were exhausted by this time.[82]  Accordingly, on the issue of his family background, the jury received substantial information, weighing both for and against mitigation.

Finally, Paredes asserts that he "likely suffered from mental illness from the time he was very young."[83]  To support this assertion, he points to affidavits from his relatives that state that from an early age and throughout his

---

[77] 21 RR 18.

[78] 20 RR 106.

[79] 20 RR 95.

[80] 24 RR 36.

[81] 24 RR 43.

[82] 20 RR 17.

[83] Paredes App. for COA at 27.

childhood, he would beat his head against the wall or a floor when he became upset.[84] We agree with Paredes that the jury did not hear that he would beat his head against hard surfaces during his childhood. Though perhaps mitigating in and of itself, this evidence is not evidence of a mental illness. For the reasons considered at length in the district court's October 2014 order, we agree with the district court that Paredes's October 2014 motion did not present any competent evidence that Paredes suffered from mental illness.

Our examination of Paredes's "new" evidence indicates that much of the evidence Paredes faults trial counsel for failing to procure and introduce concerned matters of which the jury was aware and on which evidence was presented. The only truly new evidence Paredes presents pertains to his head banging.

The evidence weighing against mitigation was substantial. Some of it is recounted in the district court's order denying the October 2014 Rule 60(b)

---

[84] Paredes App. for COA at 27.

No. 14-51160

motion. We quote from that order in the margin.[85] Additionally, Dr. King testified that Paredes understood the difference between right and wrong.[86]

On balance, Paredes has not presented new mitigating evidence that would call into question the jury's verdict during the punishment phase of the trial.

---

[85] The district court's order provided:

> The punishment phase of petitioner's capital murder trial began October 23, 2001. The prosecution presented witnesses who testified about (1) the history of the HPL gang and its activities; (2) petitioner's involvement in an incident on June 15, 1997 in which petitioner threw a pistol under the vehicle he had been driving when police stopped petitioner's vehicle based on a report it had been involved minutes earlier in a drive-by shooting; (3) an incident on November 3, 1999 in which petitioner was arrested for driving while intoxicated, without a license, and unlawfully carrying a firearm; (4) petitioner's involvement in an incident on January 15, 2000 in which several shots were fired from an assault rifle into a crowd of persons outside a convenience store; (5) the recovery of the military assault rifle used in that shooting from petitioner's residence on February 1, 2000; (6) an incident on May 21, 2000, in which petitioner and Fred Galvan were jointly arrested for criminal trespass; (7) petitioner's fatal shooting of Pedro "Pete" Pedraza on June 23, 2000; (8) an incident on June 28, 2000, in which Greg Alvarado drove a vehicle containing petitioner at a dangerous rate of speed through a residential neighborhood in an unsuccessful attempt to flee from pursuing police vehicles and, when Alvarado crashed the vehicle into a house, petitioner attempted to flee on foot; (7) the recovery of a loaded handgun apparently thrown from Alvarado's vehicle during the pursuit on June 28, 2000; (8) petitioner and Fred Galvan's aggravated kidnaping of Joe Rodriguez on July 5, 2000; (9) the recovery of multiple firearms from beneath the mattress in petitioner's bedroom on July 5, 2000; (10) petitioner's involvement in the fatal shooting of Danny Sandoval on September 1, 2000; (11) petitioner's efforts to dispose of the body of a drug overdose victim by setting her body on fire on September 12, 2000; (12) petitioner's failures to report as required to his parole officer and petitioner's failures to inform his parole officer regarding his multiple arrests while on parole; and (13) the absence of any evidence of either (a) a mental deficiency or learning disability, (b) a history of physical, emotional, or sexual abuse, or (c) a history of long-term narcotics abuse from petitioner's background.

Order Dismissing Rule 60(b) Motion and Denying Motion for Stay of Execution at 2-3, *Paredes v. Stephens* (No. SA-05-CA-870-FB) (W.D. Tex. Oct. 23, 2014).

[86] 20 RR 123.

No. 14-51160

## B

Paredes contends that his state habeas counsel, Michael Gross, rendered ineffective assistance because he permitted Paredes to waive, without a competency hearing, his ineffective-assistance-of-counsel claim regarding trial counsel's performance in the mitigation phase of the trial.[87] A habeas petitioner must be competent to waive the right to collateral review, and such waiver must be knowing and voluntary.[88] However, a court need not make a competency determination in every case in which a defendant seeks to waive a right: "a competency determination is necessary only when a court has reason to doubt the defendant's competence."[89] The relevant questions, therefore, are: (1) whether Gross should have had reason to doubt Paredes's competency to waive his right to pursue the ineffective-assistance claim as to trial counsel's penalty-phase performance; and (2) whether Paredes's waiver was knowing and voluntary. Paredes bears the burden of proving a bona fide doubt existed as to his competency to waive collateral review of a particular issue.[90] He has failed to carry this burden. We conclude that, even had Gross reviewed all the

---

[87] Application for COA at 28.

[88] *See Godinez v. Moran*, 509 U.S. 389, 400 (1993); *Mata v. Johnson*, 291 F.3d 324, 329 & n.2 (5th Cir. 2000).

[89] *Godinez*, 509 U.S. at 401 n.13 (citation omitted); *see also* TEX. CODE CRIM. PROC. art. 46B.003(a).

[90] *Cf. Wood v. Quarterman*, 491 F.3d 196, 205 (5th Cir. 2007) (concluding that a petitioner who instructed trial counsel not to present mitigating evidence was not entitled to habeas relief because he failed to point to any evidence that would put his competence to stand trial into question); *Enriquez v. Procunier*, 752 F.2d 111, 113 (5th Cir. 1984) (citing *Reese v. Wainwright*, 600 F.2d 1085, 1091 (5th Cir. 1979)) ("A petitioner seeking habeas relief based on the trial court's alleged failure to comply with *Pate*, has the burden of proving that the objective facts known to the trial court were sufficient to raise a bona fide doubt as to his competency [to stand trial]."); *Godinez*, 509 U.S. at 398 n.9 (explaining that there is "there is no indication" that the "rational choice" standard for competency to waive a certiorari petition differs from the "rational understanding" standard for competency to stand trial); *id.*at 400 (to plead guilty or waive constitutional right to counsel, defendant must be competent to stand trial).

22

evidence now before this court, and introduced that evidence in the state habeas proceeding, neither he nor the state habeas court would have had reason to doubt Paredes's competence.

A bona fide doubt did not exist as to Paredes's competence.[91] A defendant is competent if he has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and has a rational as well as factual understanding of the proceedings against him."[92]

At trial, Jesus Hernandez, Paredes's parole officer, and Dr. Catherine King, a psychologist who had evaluated Paredes while he was in the custody of the TYC, both testified. Hernandez stated that Paredes did not suffer from mental retardation and did not need special-education services.[93] Dr. King opined that Paredes's behavior was "unremarkable," and that on a test of nonverbal intelligence, he scored an 89, at the high end of the low range, meaning that he did not suffer from mental retardation.[94] She also stated she had diagnosed him with a conduct disorder, and that he suffered from anxiety due to his incarceration and struggled with trusting others and controlling his anger.[95] Finally, she noted that while Paredes had been abusing drugs and alcohol since an early age, he did understand the difference between right and wrong.[96] This testimony paints a portrait of a person with an unfortunate past, but is not the type of evidence that could have given rise to a reason to doubt

---

[91] *Godinez*, 509 U.S. at 400.

[92] *Mata*, 210 F.3d at 329 n.2 (quoting *Godinez*, 509 U.S. at 396 (internal quotation marks omitted)).

[93] 20 RR 90, 104.

[94] 20 RR 116-17.

[95] 20 RR 118.

[96] 20 RR 118, 123.

Paredes's "rational and factual understanding of the proceedings against him."[97]

Gross appended to the state habeas petition an affidavit from Dr. Jack Ferrell, a clinical psychologist who had interviewed Paredes during the summer of 2002.[98]    Dr. Ferrell reported much of the same information eventually included in the petition itself: that Paredes dropped out of school in the eighth grade; that he lacked any semblance of a functional family life; and that his involvement in gang activity "took the place of family support."[99]   Dr. Ferrell concluded Paredes was nevertheless a candidate for rehabilitation because he performed well in school as a small child and seemed to respond positively to an experience at a boot camp in Texarkana, Texas.[100]   Notably, he did not indicate at any point that he believed Paredes to be incompetent.[101]

During the state habeas proceeding, the court accepted Paredes's waiver of his argument that his trial counsel was ineffective to the extent it failed to present mitigating evidence during his sentencing hearing.[102]  Upon learning of Paredes's desire to waive this argument, the court questioned Paredes to ensure that he understood the right he was forfeiting.[103]

> MR. GROSS: Excuse me, Judge.  I'm sorry to interrupt.  I should have mentioned before we started, I've been asked by Mr. Paredes to drop the lack of any mitigation evidence prong of our [ineffective assistance of counsel] claim; I forgot to mention that earlier.  So as far as whether or not they submitted any kind of

---

[97] *Mata*, 291 F.3d at 329 & n.2 (quoting *Godinez*, 509 U.S. at 396 (internal quotation marks omitted)).

[98] Ferrell Aff. at 1.

[99] Ferrell Aff. at 1-2.

[100] Ferrell Aff. at 1-2.

[101] Ferrell Aff. at 1-2.

[102] ROA at 268-72.

[103] ROA at 268-72.

mitigation evidence or witnesses at the sentencing phase, Mr. Paredes has asked me not to pursue that ground of that claim.

MR. SHAUGHNESSY: So is it my understanding that there is going to be an expressed waiver of a claim that the attorneys were—functioned in a manner in violation of the Sixth Amendment at the punishment phase?

MR. GROSS: Correct.   There will be no claims about punishment phase at the trial, Your Honor.

MR. SHAUGNESSY:  One thing, Your Honor, I've had this happen on prior occasions, no disrespect to Mr. Gross, but I think due to the nature of the waiver I'd like to get that from Mr. Paredes himself, if the Court would be so accommodating.  I think it's a sufficient amount of magnitude---

MR. GROSS:  That's fine, Judge.

MR. SHAUGHNESSY:  ---in the aspect of the waiver I think Mr. Paredes should be admonished regarding precisely what he's waiving in this regard.

THE COURT:  Do you want that oral, right now?

MR. SHAUGHNESSY:  I would appreciate it if you could, Your Honor.

THE COURT: Mr. Paredes, you understood what your attorney just said?

[PAREDES]: I understood exactly everything he said.  I'm aware of that, and I'm waiving it.

THE COURT: You're waiving it. And you're sure about that?

[PAREDES]: I'm sure about it.

After a short recess, the court again sought confirmation of Paredes's understanding of his waiver.

THE COURT: Okay. So --- I'm sorry.  Let me ask you again, Mr. Paredes, you're sure that you want---you don't want to proceed with that?

[PAREDES]:  I don't want to raise no mitigation evidence at all.

MR.SHAUGHNESSY:  Well, really, Your Honor, the claim---the assertion that is being waived, and I'd like clarification on, is whether he wants to waive the claim that his lawyers were ineffective for not putting on certain evidence.

25

> THE COURT:  Oh, I see.
>
> MR. SHAUGHNESSY:  That's really what—that's what's being waived, the claim, not the putting on of the evidence now. It's the failure on the part of his lawyers previously that he's now waiving.  I think that is what has to be clarified.
>
> THE COURT:  Okay.  So, Mr. Paredes, are you saying—
>
> [PAREDES]: Can you give me a minute to—
>
> THE COURT: Oh, sure. Sure. You take your time.
>
> [PAREDES]: Your Honor?
>
> THE COURT: Yes, sir.
>
> PAREDES: We're waiving the one for the punishment phase but not the guilt/innocence.[104]

The state habeas court had ample opportunity to observe Paredes and form an opinion as to his competency to waive an argument.[105]  The state habeas judge had also served as the trial judge.  Nothing in the record of the state habeas hearing indicates that the state habeas court or Gross should have had a bona fide doubt as to Paredes's competency.

During Gross's cross-examination of Granados, Paredes's state trial counsel, Granados testified that Paredes was always helpful and pleasant and could read and write in English.[106]  He noted that, during jury selection, Paredes would take notes, and counsel would discuss pros and cons with him before Paredes made the final decision on whether to strike a potential juror.[107] He also stated he believed Paredes was competent, as defined in Chapter 46 in

---

[104] ROA at 268-72.

[105] *Mata v. Johnson*, 210 F.3d 324, 330 (5th Cir. 2000) ("The opportunity for face-to-face dialogue between the court and the petitioner and the ability of the court to personally observe the petitioner is likewise important to the equation."); *see also Drope v. Missouri*, 420 U.S. 162, 180 (1975) ("[E]vidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required . . . .").

[106] ROA at 252,

[107] ROA at 253.

the Texas Code of Criminal Procedure.[108]   He noted he had informed Paredes of the nature of the offense and the state's allegations, the state's burden, and the potential punishment, including the special issues that would be submitted to the jury during the punishment phase if he were convicted of capital murder.[109]   He then asserted that Paredes "fully understood the legal as well as the practical aspects of his situation."[110]   Finally, he indicated Paredes "did assist us in punishment evidence as far as his background, you know, his family."[111]   While this evidence obviously speaks to Paredes's competence at the time of trial, it supports an inference that neither Gross nor the state habeas court had reason to doubt Paredes's competence at the state habeas hearing.

Paredes now argues that evidence of his treatment for mental health issues, if presented to the state habeas court, would have raised a bona fide doubt as to his competency to waive part of his ineffective-assistance-of-counsel claim.  Paredes asserts that the fact he was prescribed anti-depressant drugs through the time of his state habeas hearing is evidence enough that he was suffering from a mental illness and incompetent to make a waiver.[112]   But a review of the Texas Department of Criminal Justice (TDCJ) medical records indicates otherwise.   After first being arrested, Paredes was prescribed Doxepin, an anti-depressant, Mellaril, an anti-psychotic, and Xanax, an anti-anxiety medication.[113]   Paredes's medications sometimes also included

---

[108] ROA at 253.

[109] ROA at 260.

[110] ROA at 261.

[111] ROA at 264.

[112] Application for COA at 31-32.

[113] ROA at 678.

Thorazine, a different anti-psychotic drug.[114]   In April 2004, seven months prior to his state habeas hearing, Paredes was diagnosed with dysthymic disorder, a form of depression.[115]   But in the months leading up to and immediately after Paredes's waiver, he was responding well to his prescription medications and did not display any sign of mental incompetency.[116]    In January 2005, the TDCJ determined that Paredes was displaying no further signs of depression.[117]   TDCJ confirmed this diagnosis in March[118] and July 2005[119] and Paredes remained on the same medication plan.  Paredes does not cite to any other evidence that casts a doubt on his mental competency to make a waiver.   There is no evidence he has even attempted to solicit expert testimony to demonstrate he was incompetent during the state habeas proceeding.   Therefore, Paredes's medical history would not have provided Gross with a bona fide doubt of Paredes's competency to waive a single argument in his multi-pronged collateral attack.

A court must find the waiver to be "knowing and voluntary."[120]  Paredes does not argue that his waiver was unknowing or involuntary.[121]

**IV**

Paredes has presented an issue that cannot be considered a successive motion for habeas corpus relief.  He contends that in the wake of the Supreme Court's decisions in *Martinez* and *Trevino*, his initial federal habeas counsel,

---

[114] ROA at 675.

[115] ROA at 298.

[116] ROA at 457-516.

[117] ROA at 470.

[118] ROA at 460-464.

[119] ROA at 458.

[120] *Godinez*, 509 U.S. at 400.

[121] *See generally* Application for COA at 26-28.

No. 14-51160

Gross, had a conflict of interest because Gross also served as state habeas counsel. Gross could not be expected to contend in the federal habeas proceedings that his performance in the first collateral proceeding (the state habeas proceeding) was deficient regarding Paredes's claim that trial counsel was ineffective in investigating and presenting mitigation evidence. Similarly, Gross could not be expected to contend in the federal habeas proceedings that his own investigation and presentation of the ineffective-assistance-of-trial-counsel claim was deficient. We will assume, without deciding, that Gross did have a conflict of interest regarding these issues when he acted as federal habeas counsel.

The assertion that Paredes's federal habeas counsel had a conflict of interest and that Paredes is entitled to reopen the final judgment and proceed in the federal habeas proceedings with conflict-free counsel is a claim that there was a defect in the integrity of the federal habeas proceedings.[122] Such a claim does not assert or reassert claims of error in the state conviction.[123] Allowing Paredes's motion to proceed as a Rule 60(b)(6) motion is not inconsistent with 28 U.S.C. § 2244(d).[124]

Federal Rule of Civil Procedure 60(b) states:

On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment

---

[122] *See Gonzalez v. Crosby*, 545 U.S. 524, 532 (2005).

[123] *See id.* at 535.

[124] *See id.*

29

that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.[125]

A Rule 60(b)(6) motion "must be made within a reasonable time,"[126] unless good cause can be shown for the delay.[127] What is considered reasonable will depend on "the particular facts and circumstances of the case."[128] However, if the reason for the motion is "mistake, inadvertence, surprise, or excusable neglect," the motion must be made within no more than a year after the entry of judgment.[129] Additionally, a movant under subsection (6) of Rule 60(b) must show "'extraordinary circumstances' justifying the reopening of a final judgment."[130] This court reviews the denial of a Rule 60(b)(6) motion under an abuse-of-discretion standard.[131]

---

[125] FED. R. CIV. P. 60(b).

[126] FED. R. CIV. P. 60(c)(1); *accord Gonzalez*, 545 U.S. at 535 ("Rule 60(b) contains its own limitations, such as the requirement that the motion 'be made within a reasonable time.'").

[127] *In re Osborne*, 379 F.3d 277, 283 (5th Cir. 2004) (citing *Pryor v. U.S. Postal Serv.*, 769 F.2d 281, 287-88 (5th Cir. 1985)).

[128] *Travelers Ins. Co. v. Liljeberg Enters., Inc.*, 38 F.3d 1404, 1410 (5th Cir. 1994) (citing *First RepublicBank Fort Worth v. Norglass, Inc.*, 958 F.2d 117, 119 (5th Cir. 1992) and *Ashford v. Steuart*, 657 F.2d 1053, 1055 (9th Cir. 1981) ("What constitutes 'reasonable time' depends on the facts of each case, taking into consideration the interest in finality, the reason for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and prejudice to other parties." (internal quotation marks omitted))).

[129] FED. R. CIV. P. 60(c)(1).

[130] *Gonzalez*, 545 U.S. at 535 (quoting *Ackermann v. United States*, 340 U.S. 193, 1999 (1950)).

[131] *See, e.g., Hernandez v. Thaler*, 630 F.3d 420, 428 (5th Cir. 2011) ("A habeas petitioner in Hernandez's situation must obtain a COA before he can appeal the denial of a Rule 60(b) motion, so both the procedural posture of this appeal and our standard of review remain unchanged. . . . On Hernandez's motion for a COA, then, we must determine whether a jurist of reason could conclude that the district court's denial of Hernandez's motion was an abuse of discretion."); *Diaz v. Stephens*, 731 F.3d 370, 374 (5th Cir. 2013) ("This court reviews the denial of a Rule 60(b)(6) motion under an abuse of discertion standard." (citation omitted)).

No. 14-51160

## A

First, the district court determined that Paredes's motion was not filed within a reasonable time, as required by Federal Rule of Civil Procedure 60(c)(1).[132]  The district court did not abuse its discretion in reaching this conclusion.

As the district court noted, the application for habeas relief that was filed in state court in 2003 set forth a detailed claim that trial counsel was ineffective in failing to discover and present mitigation evidence during the penalty phase of the trial.  Paredes waived this claim in open court during the 2004 state habeas corpus hearing, after being questioned by the state judge if he understood what he was waiving.  Accordingly, at least by 2004, Paredes was aware that he had an ineffective-assistance-of-trial-counsel claim regarding mitigation evidence, that he had waived that claim, and that his state habeas counsel had participated in that waiver process.  He did not seek different counsel in the federal habeas proceedings.

The final judgment under challenge in the present proceeding was issued in 2007.[133]  In 2012, the Supreme Court issued its decision in *Martinez*.[134] Arguably, that decision could have put Paredes on notice that his counsel had a conflict of interest.  However, our court held in *Trevino v. Thaler*[135] that the *Martinez* decision did not apply to the Texas habeas procedure.  The Supreme Court reversed our *Trevino* decision on May 28, 2013.[136]  The Supreme Court's

---

[132] FED. R. CIV. P. 60(c)(1).

[133] *Paredes v. Quarterman*, Civ. No. SA-05-CA-870-FB, 2007 WL 760230, at *1 (Mar. 8, 2007).

[134] *Martinez v. Ryan*, 132 S.Ct. 1309 (2012).

[135] 449 Fed. Appx. 415.

[136] 133 S.Ct. 1911 (2013).

31

decision in *Trevino* provided the basis for the conflict of interest argument that Paredes now asserts.

Paredes argues that Gross remained as his counsel until new counsel entered an appearance in federal district court in October 2014, and that as long as Gross continued as Paredes's counsel, there were no grounds for filing a Rule 60(b) motion. We disagree. As indicated, at least when the Supreme Court's decision in *Trevino* issued, Paredes had a basis for the contention that Gross had a conflict of interest. Paredes's unawareness of the *Trevino* decision could be described, at best, as mistake, inadvertence, or excusable neglect in keeping apprised of the law that pertained to his state conviction. Under Rule 60(b), when there is mistake, inadvertence, or excusable neglect, a Rule 60(b) motion must be filed within one year after the entry of judgment. By analogy, even assuming that the first time that Paredes should have been aware of Gross's conflict of interest was when *Trevino* issued, Paredes waited seventeen months to file his Rule 60(b)(6) motion asserting the conflict of interest. Paredes contacted conflict-free counsel in June 2014, thirteen months after *Trevino* issued. He took no further action, however, until his conflict-free counsel filed the Rule 60(b)(6) motion four months later in October 2014. Paredes did not timely file his motion.[137]

## B

Even if Paredes's motion was not untimely, it did not present extraordinary circumstances, a necessary element for relief under Rule

---

[137] *See Tamayo v. Stephens*, 740 F.3d 986, 991 (5th Cir. 2014) (per curiam) ("[W]e agree with the district court that Tamayo's claim was not brought within a 'reasonable time.' The Court's opinion in *Perkins* was issued on May 28, 2013, nearly 8 months ago. Tamayo waited until January 20, 2014, two days before his scheduled execution, to file [the Rule 60(b)(6)] motion. The district court did not abuse its discretion in concluding that this was not a 'reasonable time' and in denying the motion.") (footnotes omitted) (citation omitted).

60(b)(6). The Supreme Court has stated that extraordinary circumstances "will rarely occur in the habeas context."[138]

As discussed above, Paredes's claims regarding the performance of his federal habeas counsel are based on the Supreme Court's rulings in *Martinez* and *Trevino*. "Under our precedents, changes in decisional law . . . do not constitute the 'extraordinary circumstances' required for granting Rule 60(b)(6) relief."[139] More specifically, we have held that *Martinez* and *Trevino* are changes in decisional law and do not, by themselves, constitute "extraordinary circumstances."[140] This is consistent with the Supreme Court's reasoning in *Gonzalez v. Crosby*.[141] In *Gonzalez*, a district court had held that a defendant's habeas petition was barred by AEDPA's statute of limitations.[142] After the district court's judgment was final, the Supreme Court issued a decision in *Artuz v. Bennett*,[143] which "showed the error of the District Court's statute-of-limitations ruling."[144] The defendant filed a Rule 60(b) motion to reopen the judgment denying habeas relief.[145] The Supreme Court held that the change in the then-prevailing law in the Eleventh Circuit brought about by the *Artuz* decision did not constitute "extraordinary circumstances."[146] The Supreme Court also remarked that this change in the law "is all the less

---

[138] *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005) (quoting *Ackermann v. United States*, 340 U.S. 193, 1999 (1950)).

[139] *Hess v. Cockrell*, 281 F.3d 212, 216 (5th Cir. 2002).

[140] *Diaz v. Stephens*, 731 F.3d 370, 376 (5th Cir. 2013); *Adams v. Thaler*, 679 F.3d 312, 320 (5th Cir. 2012).

[141] 545 U.S. 524, 536 (2005).

[142] *Id.* at 527.

[143] 531 U.S. 4 (2000).

[144] *Gonzalez*, 545 U.S. at 536.

[145] *Id.*

[146] *Id.*

extraordinary in petitioner's case, because of his lack of diligence in pursuing review of the statute-of-limitations issue" in an application for a COA or a petition for rehearing in the Eleventh Circuit.  In the present case, Paredes has exhibited a similar lack of diligence.  He certainly knew in 2004 that he had an ineffective-assistance-of-trial-counsel claim regarding mitigation evidence.  He not only expressly waived that claim in state court, he did not ask for new counsel in the subsequent federal habeas proceedings, he did not ask Gross to pursue the question in the federal habeas proceeding, and he waited until seventeen months after the *Trevino* decision to attempt to resurrect the claim.

## V

A stay of execution is an equitable remedy.[147]  In deciding whether to grant a stay, we consider: (1) whether the inmate has made a strong showing he is likely to succeed on the merits; (2) whether the inmate will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties; (4) where the public interest lies; and (5) the extent to which the inmate has delayed unnecessarily in bringing the claim.[148]

Two factors weigh heavily against granting a stay of Paredes's execution.  First, Paredes has not demonstrated any likelihood of success on the merits.  His claims are either barred as successive habeas petitions by § 2254(b) or were properly denied under Rule 60(b).  Second, Paredes delayed too long before bringing these claims before the court.  "Given the State's significant interest in enforcing its criminal judgments . . . , there is a strong equitable presumption against the grant of a stay where a claim could have been brought

---

[147] *Nelson v. Campbell*, 541 U.S. 637, 649 (2004).

[148] *See Nken v. Holder*, 556 U.S. 418, 434 (2009); *Nelson*, 541 U.S. at 649.

No. 14-51160

at such a time as to allow consideration of the merits without requiring entry of a stay."[149]  We therefore deny Paredes's motion for a stay of execution.

*     *     *

We therefore AFFIRM the district court's denial of Paredes's Rule 60(b) motion and DENY Paredes's motion to stay.  We DENY the application for a certificate of appealability.

---

[149] *Nelson*, 541 U.S. at 650 (citations omitted).