# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-70034

United States Court of Appeals
Fifth Circuit

**FILED**

March 10, 2017

Lyle W. Cayce
Clerk

TROY CLARK,

Petitioner–Appellant,

v.

LORIE DAVIS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent–Appellee.

Appeal from the United States District Court
for the Eastern District of Texas

Before STEWART, Chief Judge, and HIGGINBOTHAM and OWEN, Circuit
Judges.

PRISCILLA R. OWEN, Circuit Judge:

Troy Clark, convicted of capital murder and sentenced to death in Texas
state court, appeals the district court's denial of his Federal Rule of Civil
Procedure 60(b)(6) motion for relief from the district court's judgment denying
his federal habeas petition. Clark contends that his state habeas counsel, who
was also his federal habeas counsel, was ineffective because he failed to
investigate fully, and consequently failed to present fully, a claim that Clark's
trial counsel was ineffective. The federal district court denied habeas relief;

No. 14-70034

this court affirmed the district court's judgment;[1] and the Supreme Court denied Clark's petition for certiorari.[2]

The Rule 60(b)(6) motion is based on the change in decisional law effectuated by the Supreme Court's decision in *Trevino v. Thaler*,[3] which held that when "it [is] highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal," a habeas petitioner's procedural default of a claim not presented during an initial-review collateral proceeding can be excused if the default was caused by state habeas counsel's ineffectiveness.[4]   This holding was an extension of the Supreme Court's reasoning in *Martinez v. Ryan*.[5]

After the *Trevino* decision issued, the state habeas court appointed new counsel for Clark, and Clark filed a successive claim for habeas corpus relief in state court, contending that a more fulsome ineffective-assistance-of-trial-counsel claim should be considered by the state courts, in light of *Martinez* and *Trevino*.  The Texas Court of Criminal Appeals dismissed that petition as an abuse of the writ.[6]  Clark proceeded to federal district court and filed a Rule 60(b)(6) motion for relief from the district court's prior denial of habeas relief. Clark contended that his counsel in the federal habeas proceeding had a conflict of interest because he could not be expected to argue his own ineffectiveness as state habeas counsel.  The district court denied the motion and declined to issue a certificate of appealability (COA).  We granted a COA, and we now affirm the district court's judgment.  The district court did not

---

[1] *Clark v. Thaler*, 673 F.3d 410, 413 (5th Cir. 2012).

[2] *Clark v. Thaler*, 133 S. Ct. 179 (2012) (mem.).

[3] 133 S. Ct. 1911 (2013).

[4] *Id*. at 1921.

[5] 566 U.S. 1 (2012).

[6] *Ex parte Clark*, No. WR-55,996-02, 2014 WL 1910597, at *1 (Tex. Crim. App. May 7, 2014) (per curiam) (unpublished).

No. 14-70034

abuse its discretion in concluding that Clark's Rule 60(b)(6) motion was untimely.

**I**

Clark was convicted of capital murder in Texas state court in March 2000. The decision of the Texas Court of Criminal Appeals on direct appeal reflects facts that were presented to the jury during the guilt phase of the trial regarding Christina Muse's murder:

> Clark lived with Tory Bush in Tyler, Texas, where the two used and sold methamphetamine. The victim, Christina Muse, lived with them for a short period of time. When Muse moved out, Clark became concerned that she would talk to the wrong people and "snitch" on him about his drug dealings.

> According to Bush, Muse came by Clark's house on May 19, 1998, and talked with Bush in the front bedroom. At some point during their conversation, Clark stunned Muse with a stun gun to her neck and told her she "should have kept [her] mouth shut." When Muse fell to the floor, Clark bound her hands, legs, and mouth with duct tape. Clark then placed Muse in a closet in the second bedroom, and Bush could hear Clark talking to her. After "a couple of hours," Clark moved Muse into the bathroom and told Bush to get him a board. Bush complied and returned to the kitchen, shortly after which she heard the loud "whack" of a board striking something. Clark yelled for Bush to come to the bathroom where she found Muse in the bathtub, blood on the back wall of the tub, and Clark filling the tub with water. Clark told Bush to help him hold Muse's head under water and threatened her when she hesitated.

> After drowning Muse, Clark told Bush to go buy some lime. Bush then went across the street to Amber Scoggin's [sic] house to get a ride to the store. When Bush returned, she took the lime to Clark in the back storage room of the house where she saw Muse's body in a blue barrel filled with cement mix. Clark poured the lime into the barrel, mixed in water, and put a lid on the barrel. The next morning, Clark woke Bush and instructed her to clean up the backyard and to put some debris and garbage in the barrel over Muse's body. When Ben Barnett, Mike Coats, and Amber Scoggins arrived later, Clark and the two men loaded the blue barrel in the

3

back of Clark's truck. After the others left, Clark and Bush transported the barrel and other trash to the property of their landlord, Velva Young. Bush told the jury that the last time she saw the barrel it was in Clark's truck, which was parked by the trash pile on Young's property. Bush then went to Young's house, while Clark borrowed Young's tractor and returned to the trash pile by himself for about an hour.[7]

With regard to the punishment phase, Clark's counsel conducted a limited investigation to determine if potentially mitigating evidence existed and did not present any mitigating evidence at trial. Clark's counsel was prepared to subpoena Clark's mother, father and other potential mitigation witnesses to testify, but Clark confirmed in response to questions from the trial court that he had instructed his counsel not to subpoena any witnesses. Accordingly, counsel focused on Clark's future dangerousness, calling one expert witness who testified that Clark would not be a future danger in prison, based on a risk assessment founded in actuarial data.[8]

Clark rejected his counsel's advice and testified during the punishment phase. As we set forth in a prior opinion,

> Clark took the stand on his own behalf, against the advice of counsel . . . . In a colloquy with counsel outside the presence of the jury, Clark confirmed that he had refused to allow his attorneys to call his mother and father to testify. Clark also acknowledged that he had personally contacted other potential mitigation witnesses and instructed them not to testify on his behalf. He expressed his desire to tell the jury that he wanted to receive the death penalty. In a contentious exchange with the prosecutor on cross-examination, Clark ultimately so testified.[9]

The jury determined that Clark was a future danger to society and that no mitigating factors warranted a life sentence. The trial court sentenced Clark

---

[7] *Clark v. Texas*, No. 73,816 (Tex. Crim. App. Nov. 25, 2002) (unpublished).

[8] *Clark v. Thaler*, 673 F.3d 410, 414 (5th Cir. 2012).

[9] *Id.*

to death as state law required.  The Texas Court of Criminal Appeals affirmed on direct appeal.[10]

The state trial court appointed new counsel, Craig Henry, to represent Clark in state habeas proceedings.  Henry submitted an application for a writ of habeas corpus asserting nine grounds for relief, the principal ground being that Clark's trial counsel rendered ineffective assistance by failing to investigate potentially mitigating facts and by failing to present mitigating evidence.  Henry included a two-page affidavit from Clark's mother, Cleta Barrington, which recounts Clark's troubled upbringing.  Barrington's affidavit stated that: Clark was born with a cleft palate that led to speech difficulties and ridicule by his peers; she used drugs for most of her adult life and supported her habit through prostitution, resulting in her incarceration for much of Clark's life; Clark's father had "very little to do with" him; Clark cycled between living with different family members during his formative years; while Clark lived with his mother's brother-in-law he was subjected to physical abuse; Clark married at fifteen to avoid being placed in the foster care system; Clark's brother committed suicide when Clark was twenty, and Clark blamed himself because he had had an argument with his brother the night before; and that she (his mother) had not been contacted by trial counsel but would have spoken with counsel if given the opportunity.  Henry spent a total of five hours investigating possible mitigating circumstances in support of the state habeas claim.  The affidavit from Clark's mother was the only evidence submitted in support of the application.

The state habeas court denied relief, concluding that trial counsel's performance was not deficient and that Clark had not demonstrated

---

[10] *Clark v. Texas*, No. 73,816 at *16 (Tex. Crim. App. Nov. 25, 2002) (unpublished).

prejudice.[11]  The Texas Court of Criminal Appeals denied relief based on the trial court's findings and its own review.[12]

Henry was appointed to represent Clark in federal habeas proceedings. He filed a federal habeas petition, again arguing that trial counsel's failure to investigate and failure to present mitigating evidence amounted to ineffective assistance of counsel.  However, Henry conducted further investigation and found evidence that was potentially mitigating.  In response to the State's motion for summary judgment, Henry attached a thirty-page report from a mitigation specialist that detailed Clark's social history through interviews with Clark and Clark's family members and an affidavit from one of Clark's trial attorneys stating that neither he nor co-counsel conducted any mitigation investigation in preparation for the punishment phase.  The mitigation specialist's report was prepared for the federal habeas proceeding and was not part of the record before the state habeas courts.

The district court, considering the affidavits from Clark's mother, trial counsel, and the mitigation specialist's report, found that trial counsel's failure to investigate mitigating evidence amounted to ineffective assistance but denied habeas relief because the federal district court found that the state court's conclusion that Clark had not demonstrated prejudice was not an unreasonable application of federal law.  The district court reasoned that the mitigating evidence was not as strong as in some other habeas cases and that it was "double-edged."  The district court also explained that there was "overwhelming evidence of . . . future dangerousness":  in addition to the heinous nature of the murder, "the jury heard evidence that [Clark] had murdered two other people, committed several aggravated assaults and thefts,

---

[11] *Clark*, 673 F.3d at 415 (citing *Ex parte Clark*, No. 55996-01, 2003 Tex. Crim. App. LEXIS 1033 (Tex. Crim. App. Oct. 1, 2003) (not designated for publication)).

[12] *Id.*

and dealt drugs over a long period of time." The district court noted that Clark testified before the jury, "often assuming a taunting, argumentative, and sarcastic demeanor." He "sparred with the prosecutor, stating that he wanted the death penalty rather than spending the rest of his life locked up for something he 'didn't do,'" thereby refusing to accept responsibility for the crime and exhibiting no remorse. The district court denied habeas relief but granted a COA on the ineffective assistance of trial counsel claim.

Subsequently, the Supreme Court held in *Cullen v. Pinholster* that under 28 U.S.C. § 2254(d)(1), federal courts are limited to the record that was before the state court when reviewing the state court's denial of habeas relief.[13] Accordingly, in Clark's first appeal to this court, we considered only the facts presented to the state habeas court.[14] We concluded that "fairminded jurists could disagree on the correctness of the state court's determination that counsel's performance was not deficient."[15] We also concluded, as an alternate basis for affirming the district court's judgment denying habeas relief, that the state court's determination that Clark did not demonstrate prejudice was not an unreasonable application of federal law.[16] Among other considerations, we concluded "most importantly, the aggravating evidence in Clark's case was overwhelming, a circumstance which . . . makes it 'virtually impossible to establish prejudice.'"[17] We noted that along with his long criminal history, the State also "demonstrated that Clark had committed two other murders, including one murder that occurred *after* Muse's death but prior to Clark's apprehension. As the Supreme Court recently recognized, evidence that a

---

[13] 563 U.S. 170, 180-81 (2011).

[14] *Clark*, 673 F.3d at 416-17, 419-20.

[15] *Id*. at 422.

[16] *Id*.

[17] *Id*. at 424 (quoting *Ladd v. Cockrell*, 311 F.3d 349, 360 (5th Cir. 2002)).

defendant 'committed another murder [is] the most powerful imaginable aggravating evidence.'"[18]

Two weeks after our decision, the Supreme Court held in *Martinez v. Ryan* that ineffective assistance by state habeas counsel in an initial-review collateral proceeding may establish cause to overcome procedural default of an ineffective-assistance-of-trial-counsel claim when state law required that such a claim be raised for the first time during the initial collateral proceeding.[19] The following term, in *Trevino v. Thaler*, the Court extended the rationale of *Martinez* to Texas convictions when state procedural rules do not require the defendant to raise an ineffective-assistance-of-trial-counsel claim in an initial-review collateral proceeding but also do not provide a meaningful opportunity to raise such a claim on direct appeal.[20]

The Supreme Court denied Clark's petition for certiorari on October 1, 2012, after *Martinez* but before *Trevino* was decided on May 28, 2013.[21] On August 21, 2013, the state trial court held a hearing to set Clark's execution date. Bobby Mims, one of Clark's trial counsel, Jeffrey Haas, Clark's counsel for his direct appeal to the Texas Court of Criminal Appeals, and Henry, his state and federal habeas counsel, were present at the hearing. All three attorneys argued to the court that in light of the Supreme Court's decisions in *Martinez* and *Trevino*, additional counsel should be appointed to determine if there were claims that should have been raised in state habeas court that were not raised due to Henry's potential ineffectiveness as state habeas counsel. The court and the attorneys expressed confusion about where a newly-appointed attorney should file Clark's potential claims based on *Martinez* and

---

[18] *Id.* (quoting *Wong v. Belmontes*, 558 U.S. 15, 28 (2009) (per curiam)).

[19] 566 U.S. 1, 13-17 (2012).

[20] 133 S. Ct. 1911, 1918, 1921 (2013).

[21] *Clark v. Thaler*, 133 S. Ct. 179 (2012) (mem.).

*Trevino.* The state court stated that it would be the new counsel's decision whether to file in state or federal court. Nonetheless, the court subsequently appointed the Office of Capital Writs (OCW), a state agency prohibited by a Texas statute from representing a defendant in federal habeas proceedings,[22] as Clark's new counsel.

On February 19, 2014, OCW filed Clark's Subsequent Application for a Writ of Habeas Corpus in state court. The application was supported by evidence that was not presented in the initial state habeas proceeding, including affidavits from Mims and Henry discussing the limits of the mitigation investigations they performed; affidavits from two experts on Fetal Alcohol Syndrome (FAS) concluding that Clark likely suffers from FAS and that evidence was available at the time of trial that should have led trial counsel to conduct an FAS evaluation; and affidavits from nine of Clark's family members providing detailed accounts of Clark's troubled upbringing and family history. On May 7, 2014, the Texas Court of Criminal Appeals dismissed Clark's application "as an abuse of the writ without considering the merits of the claim."[23]

Six days later, on May 13, 2014, a motion seeking to substitute David Dow and Jeffrey Newberry as Clark's counsel and to permit Henry to withdraw was filed in the federal district court. That motion did not assert that Henry had a conflict of interest but stated that "Mr. Henry was not involved in the successive state court litigation," and that "Mr. Dow and Mr. Newberry are conversant with the issue raised in the state court litigation." The motion was granted on May 19, 2014. On September 19, 2014, four months after the

---

[22] TEX. GOV'T CODE ANN. § 78.054(b) (West) ("The office may not represent a defendant in a federal habeas review.").

[23] *Ex parte Clark*, No. WR-55,996-02, 2014 WL 1910597, at *1 (Tex. Crim. App. May 7, 2014) (per curiam) (unpublished).

motion for substitution was granted, Clark, through new counsel, filed a Rule 60(b)(6) motion for relief from the district court's judgment denying Clark's federal habeas petition.  Clark argued that Henry had an inherent conflict of interest once the decision in *Martinez* issued and that extraordinary circumstances existed for granting Rule 60(b)(6) relief because Henry had remained Clark's counsel of record before the federal district court for seventeen months after *Martinez* was decided.

In support of the Rule 60(b) motion, Clark also submitted a Proposed Amended Claim indicating what he would file with the district court if granted Rule 60(b) relief.  The Proposed Amended Claim contains one ground for relief: Clark's trial counsel was ineffective by failing to conduct a reasonable mitigation investigation.  This claim is supported by the evidence submitted to the state trial court in the second state habeas application: affidavits from Clark's previous counsel, FAS experts, and numerous family members.

A magistrate judge recommended that Clark's Rule 60(b)(6) motion be denied as untimely and meritless and denied a COA.  The district court agreed and adopted the magistrate's recommendations.  This court granted a COA.[24]

## II

Federal Rule of Civil Procedure 60(b)(6) permits a court to relieve a party from a final judgment for "any . . . reason that justifies relief."[25]  To obtain relief under Rule 60(b)(6), Clark's motion must have been made "within a reasonable time"[26] and must "show 'extraordinary circumstances' justifying the reopening of a final judgment."[27]  We review the denial of a Rule 60(b)

---

[24] *Clark v. Stephens*, No. 14-70034, 2015 WL 5730638 (5th Cir. 2015) (per curiam) (unpublished).

[25] FED. R. CIV. P. 60(b)(6).

[26] FED. R. CIV. P. 60(c)(1).

[27] *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005) (quoting *Ackermann v. United States*, 340 U.S. 193, 199 (1950)).

No. 14-70034

motion for abuse of discretion.[28]  The district court determined that Clark's motion should be denied as both untimely and without merit.

### III

We first address whether Clark's Rule 60(b)(6) motion is prohibited under the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA) pertaining to second-or-successive habeas petitions.[29]  As the Supreme Court explained in *Gonzalez v. Crosby*, "Rule 60(b), like the rest of the Rules of Civil Procedure, applies in habeas corpus proceedings under 28 U.S.C. § 2254 only 'to the extent that [it is] not inconsistent with' applicable federal statutory provisions and rules."[30]  Three requirements are imposed on second or successive habeas petitions by 28 U.S.C. § 2244(b)(1)-(3).[31]  They are (1) "any claim that has already been adjudicated in a previous petition must be dismissed;"[32] (2) "any claim that has *not* already been adjudicated must be dismissed unless it relies on either a new and retroactive rule of constitutional law or new facts"[33] that "could not have been discovered previously through the exercise of due diligence"[34] and "show[] a high probability of actual innocence;"[35] and (3) "before the district court may accept a successive petition for filing, the court of appeals must determine that it presents a claim not

---

[28] *Hernandez v. Thaler*, 630 F.3d 420, 428 (5th Cir. 2011); *see also Diaz v. Stephens*, 731 F.3d 370, 374 (5th Cir. 2013) ("In applying such a standard, '[i]t is not enough that the granting of relief might have been permissible, or even warranted[—]denial must have been so unwarranted as to constitute an abuse of discretion.'") (quoting *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 402 (5th Cir. Unit A Jan. 1981)).

[29] 28 U.S.C. § 2244.

[30] 545 U.S. at 529 (quoting 28 U.S.C. § 2254 Rule 11fJuni) (footnote omitted).

[31] *Id.*

[32] *Id.* at 529-30 (citing 28 U.S.C. § 2244(b)(1)).

[33] *Id.* at 530.

[34] 28 U.S.C. § 2244(b)(2)(B)(i).

[35] *Gonzales*, 545 U.S. at 530 (citing 28 U.S.C. § 2244(b)(2)).

previously raised that is sufficient to meet § 2244(b)(2)'s new-rule or actual-innocence provisions."[36]

However, "when a Rule 60(b) motion attacks, not the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity of the federal habeas proceedings,"[37] it is properly considered a Rule 60(b) motion for relief from judgment. A Rule 60(b) motion based on "habeas counsel's omissions ordinarily does not go to the integrity of the proceedings, but in effect asks for a second chance to have the merits determined favorably."[38] Clark argues in his initial brief in our court that his Rule 60(b) motion challenges a defect in the integrity of his federal habeas proceeding and is therefore not barred by AEDPA because, he contends, Henry, who served as both state and federal habeas counsel, had a conflict of interest in light of the Supreme Court's decisions in *Martinez*[39] and *Trevino*,[40] and could not be expected to argue his own ineffectiveness to overcome the "default" in state habeas proceedings of Clark's claim that trial counsel was ineffective. Though the principal issue that Henry raised in the initial state habeas proceeding was trial counsel's failure to investigate for mitigation evidence, Clark asserts that Henry was himself ineffective in failing to investigate mitigation evidence more thoroughly and consequently failing to present a fully developed claim in the initial state habeas proceeding.

Henry did not contend in the federal habeas proceeding that he had been ineffective in the state habeas proceeding, and when *Martinez* issued shortly after this court affirmed the denial of habeas relief, Henry did not withdraw or seek reconsideration or further relief based on *Martinez*. Clark contends that

---

[36] *Id.* (citing 28 U.S.C. § 2244(b)(3)).
[37] *Id.* at 532.
[38] *Id.* at 532 n.5 (citation omitted).
[39] *Martinez v. Ryan*, 566 U.S. 1 (2012).
[40] *Trevino v. Thaler*, 133 S. Ct. 1911 (2013).

No. 14-70034

this prevented him from having his ineffective-assistance-of-trial-counsel claim reviewed on the merits in the federal habeas proceeding and that the federal habeas proceeding should be reopened to allow him to present his now fully-developed claim that trial counsel was ineffective because they did not discover or present mitigating evidence.

Capital habeas petitioners have a statutory right to conflict-free counsel.[41] We have recently indicated in an unpublished opinion that a Rule 60(b) motion premised on federal habeas counsel's conflict of interest need not be considered a successive habeas petition.[42] To the extent that Clark's Rule 60(b)(6) motion attacks not the substance of the federal court's resolution of the claim of the merits, but asserts that Henry had a conflict of interest that resulted in a defect in the integrity of the proceedings, the motion is not an impermissible successive petition.

## IV

A motion under Rule 60(b)(6) must be made "within a reasonable time,"[43] "unless good cause can be shown for the delay."[44] Reasonableness turns on the "particular facts and circumstances of the case."[45] We consider "whether the

---

[41] *See Juniper v. Davis*, 737 F.3d 288, 290 & n.2 (4th Cir. 2013); *see also Mendoza v. Stephens*, 783 F.3d 203, 210 (5th Cir. 2015) (per curiam) (mem.) (OWEN, J., concurring) ("Mendoza is statutorily entitled to conflict-free counsel at this stage in his habeas proceedings.") (citing *Juniper*, 737 F.3d 288; *Gray v. Pearson*, 526 F. App'x 331 (4th Cir. 2013); 18 U.S.C. § 3599(a)); *Christeson v. Roper*, 135 S. Ct. 891, 895 (2015) (recognizing that grounds for substitution under § 3599 exist when an attorney's personal interests prevent her from advancing her client's best arguments).

[42] *In re Paredes*, 587 F. App'x 805, 822-23 (5th Cir. 2014) (per curiam) ("Paredes has presented an issue that cannot be considered a successive motion for habeas corpus relief. He contends that in the wake of the Supreme Court's decisions in *Martinez* and *Trevino*, his initial federal habeas counsel, Gross, had a conflict of interest because Gross also served as state habeas counsel.").

[43] FED. R. CIV. P. 60(c)(1).

[44] *In re Osborne*, 379 F.3d 277, 283 (5th Cir. 2004) (citing *Pryor v. U.S. Postal Serv.*, 769 F.2d 281, 287-88 (5th Cir. 1985)).

[45] *Travelers Ins. Co. v. Liljeberg Enters., Inc.*, 38 F.3d 1404, 1410 (5th Cir. 1994) (citing *First RepublicBank Fort Worth v. Norglass, Inc.*, 958 F.2d 117, 119 (5th Cir. 1992)); *see also*

party opposing the motion has been prejudiced by the delay in seeking relief and . . . whether the moving party had some good reason for his failure to take appropriate action sooner."[46]  "[T]imeliness . . . is measured as of the point in time when the moving party has grounds to make [a Rule 60(b)] motion, regardless of the time that has elapsed since the entry of judgment."[47]

Because Clark's contention that his Rule 60(b)(6) motion was timely is intertwined with arguments he asserts regarding the Supreme Court's decisions in *Martinez v. Ryan*,[48] and *Trevino v. Thaler,*[49] we again briefly address the import of those decisions.  Prior to *Martinez*, the Supreme Court's decision in *Coleman v. Thompson* foreclosed federal habeas petitioners from asserting, as excuse for the procedural default of an issue, that state habeas counsel had provided ineffective assistance.[50]  The *Martinez* decision changed the law in this regard by recognizing an exception that applies when state law prohibits a defendant from raising any ineffective-assistance-of-trial-counsel claim on direct appeal.[51]  In such a circumstance, because collateral review is the first opportunity to raise a contention that trial counsel was ineffective, a petitioner seeking federal habeas relief may assert that his state habeas counsel was ineffective for failing to raise trial counsel's ineffectiveness and therefore that the procedural default of the claim regarding trial counsel's

---

*Ashford v. Steuart*, 657 F.2d 1053, 1055 (9th Cir. 1981) (per curiam) ("What constitutes 'reasonable time' depends upon the facts of each case, taking into consideration the interest in finality, the reason for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and prejudice to other parties.").

[46] *Lairsey v. Advance Abrasives Co.*, 542 F.2d 928, 930 (5th Cir. 1976) (quoting 11 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 2866, at 228-29).

[47] *First RepublicBank*, 958 F.2d at 120.

[48] 566 U.S. 1 (2012).

[49] 133 S. Ct. 1911 (2013).

[50] 501 U.S. 722, 757 (1991).

[51] *Martinez*, 566 U.S. at 9, 13-14; *see also Trevino v. Thaler*, 133 S. Ct. 1911, 1914 (2013) (explaining that the procedural rule at issue in *Martinez* "required a defendant convicted at trial to raise a claim of ineffective assistance of trial counsel during his first state collateral review proceeding—or lose the claim").

ineffectiveness should be excused.[52]    Under Texas law, few ineffective-assistance-of-trial-counsel claims can be asserted and decided on direct appeal.[53]  In *Trevino*, the Supreme Court extended the *Martinez* exception to a Texas conviction because the first opportunity to obtain review of the ineffective-assistance-of-trial-counsel claim in that case could not have been adjudicated on direct appeal and therefore, the first opportunity to obtain review would have been in a state collateral review proceeding.[54]

Clark argued in his Rule 60(b)(6) motion that "Henry should have asked [the federal district court] to appoint new counsel as soon as the Supreme Court handed down its opinion in *Martinez*," and that Henry "became fatally afflicted by a conflict of interest on March 20, 2012," the date that *Martinez* issued.  If March 20, 2012 is utilized as the date that the grounds for Clark's Rule 60(b) motion materialized, then Clark's Rule 60(b)(6) motion, filed September 19, 2014, was submitted two years and six months after *Martinez* was decided. His motion would be untimely, based on that analysis.[55]

However, it is more appropriate to conclude that Henry's potential conflict of interest while acting as Clark's federal habeas counsel did not arise until *Trevino v. Thaler*[56] was decided.  The Supreme Court explained in *Trevino* that "we qualified our holding" in *Martinez*.[57]  "We said that the holding applied where state procedural law said that 'claims of ineffective

---

[52] *Id.* at 13-14, 16.

[53] *Trevino*, 133 S. Ct. at 1918-1919.

[54] *Id.* at 1921.

[55] *Tamayo v. Stephens*, 740 F.3d 986, 991 (5th Cir. 2014) (per curiam) (holding that the district court did not abuse its discretion in denying a Rule 60(b) motion when the relevant change in law occurred eight months prior, and petitioner filed the motion two days before his execution); *In re Paredes*, 587 F. App'x 805, 824-25 (5th Cir. 2014) (per curiam) (holding that a defendant who had waited thirteen months after *Trevino* was decided before seeking appointment of conflict-free counsel had not filed his Rule 60(b) motion within a reasonable time).

[56] 133 S. Ct. 1911 (2013).

[57] *Id.* at 1914.

assistance of trial counsel *must* be raised in an initial-review collateral proceeding.'"[58]    Texas law, the Court noted, did not come within that qualification.[59]  The decision in *Trevino* extended *Martinez* to convictions from Texas and other jurisdictions when an ineffective-assistance-of-trial-counsel claim could not be raised effectively in a direct appeal.[60]  The contention that a conflict of interest may arise when state habeas counsel in Texas is also federal habeas counsel flows from *Trevino*.[61]  Accordingly, the touchstone for Clark's Rule 60(b) motion, which is that Henry had a conflict of interest, came into existence on May 28, 2013, the date of the *Trevino* decision.

Clark contends that the relevant date for determining timeliness of his Rule 60(b)(6) motion is the date on which the federal district court permitted new counsel to be substituted for Henry, which was May 19, 2014.  The federal district court disagreed, concluding that "Rule 60(c) timeliness requirements are not reset every time a litigant obtains a new attorney," and reasoned that the motion was filed "more than fifteen months after *Trevino* was decided."  We agree with this analysis.  Additionally, we note that conflict-free counsel was appointed by the state court to represent Clark in August of 2013. The *Trevino* decision had been extant for twelve months, since May 2013, by the time that Clark asked the federal district court to substitute new counsel for Henry.

---

[58] *Id*. at 1914-15.

[59] *Id*. at 1915 (The court explained: "In this case Texas state law does not say 'must.' It does not on its face require a defendant initially to raise an ineffective-assistance-of-trial-counsel claim in a state collateral review proceeding.  Rather, that law appears at first glance to permit (but not require) the defendant initially to raise a claim of ineffective assistance of trial counsel on direct appeal.  The structure and design of the Texas system in actual operation, however, make it 'virtually impossible' for an ineffective assistance claim to be presented on direct review.  We must now decide whether the *Martinez* exception applies in this procedural regime.  We conclude that it does." (citation omitted)).

[60] *See id*.

[61] *In re Paredes*, 587 F. App'x 805, 824-25 (5th Cir. 2014) (per curiam); *see also Pruett v. Stephens*, 608 F. App'x 182, 186 (5th Cir. 2015) (per curiam) (noting that *Trevino* "provided the basis for the conflict of interest argument" raised in the Rule 60(b) motion).

No. 14-70034

Clark's Rule 60(b) motion did not explain why he did not seek new counsel in the federal district court sooner than he did. The date that the federal district court permitted new counsel to appear should not be the starting point for measuring timeliness of the Rule 60(b)(6) motion in this case.

As noted, Clark filed his Rule 60(b) motion on September 19, 2014, almost sixteen months after *Trevino* was decided on May 28, 2013.[62] If, rather than the date *Trevino* issued, we utilize August 2013, the date that conflict-free counsel was appointed by the state habeas court, then the Rule 60(b)(6) motion was filed twelve months after new counsel was appointed. Using either date, the Rule 60(b)(6) motion was untimely.

This court and others have concluded that periods of delay similar to or shorter than the period at issue here can constitute unreasonable delay under Rule 60(b).[63] In *Tamayo v. Stephens*, we affirmed the district court's judgment, which held that a Rule 60(b) motion, filed nearly eight months after the pertinent change in decisional law, was untimely.[64] In *Pruett v. Stephens*, the petitioner waited more than nineteen months after *Trevino* was decided to file his Rule 60(b) motion.[65] We concluded that the district court did not abuse its discretion in holding the motion was not filed within a reasonable time.[66]

---

[62] 133 S. Ct. 1911 (2013).

[63] *See, e.g.*, *Tamayo v. Stephens*, 740 F.3d 986, 991 (5th Cir. 2014) (per curiam) (eight months after change in law was untimely); *Trottie v. Stephens*, 581 F. App'x 436, 438 (5th Cir. 2014) (per curiam) (three years from district court denial of petition and over a year from denial of a COA not timely); *Buck v. Thaler*, 452 F. App'x 423, 429-30 (5th Cir. 2011) (per curiam) (over a year after denial of certiorari and no extenuating circumstances not within reasonable time); *cf. Lewis v. Lewis*, 326 F. App'x 420, 420 (9th Cir. 2009) (mem.) (unpublished) (six-month delay without any explanation not reasonable); *Tredway v. Parke*, 79 F.3d 1150, at *1 (7th Cir. 1996) (unpublished) (five-month delay was unreasonable when motion only challenged court's prior analysis).

[64] *Tamayo*, 740 F.3d 986, 991 (5th Cir. 2014).

[65] *Pruett*, 608 F. App'x at 186.

[66] *Id.*

No. 14-70034

Clark asserts that his motion was nevertheless timely because (1) the nine-month period during which his 2014 state habeas petition was prepared and pending should be excused; and (2) the four months in 2014 in which newly appointed federal counsel prepared the Rule 60(b) motion should be excused. Under Rule 60(b), unreasonable delay can be excused if "good cause" is shown for the delay.[67] "What constitutes 'good cause' . . . 'must necessarily be evaluated on a case-by-case basis.'"[68]

Clark could have made concurrent state and federal filings, and therefore, the nine month period in which OCW prepared his 2014 successive state habeas petition and during which that petition was pending before the state court should not be excused. Although OCW was barred by a Texas statute from representing Clark in any federal proceeding,[69] OCW was not barred from advising Clark to seek federal habeas counsel and pursue concurrent federal proceedings.[70] Furthermore, Clark was physically present in August 2013 when the state trial court considered whether a conflict of interest had arisen in the wake of *Trevino* due to Henry's representation of Clark in both state and federal habeas proceedings. In addition to Henry, Clark's trial counsel and direct appeal counsel were also present and voiced their concerns about Henry's conflict of interest in that proceeding. Henry indicated to the trial court that it would be prudent to appoint additional habeas counsel. There was a discussion as to whether further filings should be made in state or federal court. That question was not resolved by the state

---

[67] *In re Osborne*, 379 F.3d 277, 283 (5th Cir. 2004).

[68] *In re Jasper*, 559 F. App'x 366, 372 (5th Cir. 2014) (quoting *Osborne*, 379 F.3d at 283)).

[69] TEX. GOV'T CODE ANN. § 78.054(b) (West).

[70] *Cf.* TEX. CODE CRIM. PROC. ANN. art. 11.071 § 2(e) (West) (providing time periods for when state habeas counsel *must* move to appoint federal habeas counsel after the court of criminal appeals denies relief).

No. 14-70034

trial court during the hearing.  Clark could have filed in federal court and then sought a stay of the federal petition while he exhausted state court remedies. The defect which forms the basis of Clark's Rule 60(b) motion—conflicted counsel—was removed in August 2013 when conflict-free counsel was appointed, not in May 2014 when Clark's 2014 state petition was denied and additional counsel was appointed for federal habeas proceedings.

In *In re Paredes*, an unpublished decision, Paredes argued that as long as a conflicted attorney remained his counsel, there were no grounds for filing a Rule 60(b) motion and that period of time should not be counted in assessing whether Paredes's Rule 60(b) motion was timely.[71] We rejected that argument, noting that Paredes had the basis for asserting that his counsel was conflicted as soon as *Trevino* was issued.[72]  We are persuaded that this conclusion is sound.

We cannot say that the district court abused its discretion in finding Clark's Rule 60(b)(6) motion untimely.

## V

The district court denied Clark's Rule 60(b)(6) motion on additional, independent grounds, which were that Clark was attempting to relitigate issues that had been decided on the merits in the federal habeas corpus proceeding, and that Clark had not shown extraordinary circumstances, as required by Rule 60(b)(6).  The district court adopted all of the magistrate judge's finding and conclusions, which addressed these issues as well.  Because we conclude that the Rule 60(b)(6) motion was untimely, we do not address whether the district court abused its discretion in determining that Clark

---

[71] *In re Paredes*, 587 F. App'x 805, 824-25 (5th Cir. 2014) (per curiam).
[72] *Id.*

No. 14-70034

failed to demonstrate "circumstances that are sufficiently extraordinary to warrant relief from final judgment."[73]

Nor do we address whether, to the extent that Clark seeks in his Rule 60(b)(6) motion to have the district court reopen and reconsider the ineffective-assistance-of-trial-counsel claim, his claim is a successive habeas petition that must be dismissed under 28 U.S.C. § 2244. We note that the Supreme Court held in *Gonzalez v. Crosby* that a change in substantive law is not a "reason justifying relief" under Rule 60(b)(6), and that a Rule 60(b)(6) motion cannot be "used to circumvent § 2244(b)(2)(A)'s dictate that the only new law on which a successive petition may rely is 'a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.'"[74] Neither *Martinez* nor *Trevino* announced a new rule of *constitutional* law, and neither has been made retroactive to cases on collateral review. The Supreme Court further observed in *Gonzalez* that "an attack based on . . . habeas counsel's omissions . . . ordinarily do[] not go to the integrity of the proceedings, but in effect asks for a second chance to have the merits determined favorably."[75]

Clark contends, somewhat inconsistently, that the mitigation evidence developed by his new state habeas counsel, which Clark has presented to the district court in his Rule 60(b)(6) motion, is so "fundamentally different" from the claim raised in state court, it is a new claim not previously reviewed on the merits. He asserts in his reply brief that though the claim is new, it should not be barred by 28 U.S.C. § 2244(d).

We need not decide whether Clark presents a new claim because, to the extent that he does, any such claim would be time-barred under 28 U.S.C.

---

[73] *Diaz v. Stephens*, 731 F.3d 370, 375 (5th Cir. 2013).

[74] 545 U.S. 524, 531-32 (2005).

[75] *Id.* at 532 n.5 (citation omitted).

No. 14-70034

§ 2244(d).  We first note that Clark has not sought leave to file a successive petition from this court; he has only appealed the district court's denial of the Rule 60(b)(6) motion.  If we were to consider part of his motion a new claim, however, it was not filed until September 19, 2014, almost two years after the Supreme Court denied his petition for certiorari.[76]  Clark contends that equitable tolling excuses any delay and the resulting noncompliance with the statute of limitations requirements of § 2244(d)(1).  Although § 2244(d)(1) is subject to equitable tolling,[77] tolling is only available in "rare and exceptional circumstances."[78]  For the same reasons we conclude that Clark's Rule 60(b)(6) motion is untimely, any available equitable tolling ended when Clark had actual knowledge in August 2013 that his federal habeas counsel had a conflict of interest.  Furthermore, Clark was in fact appointed conflict-free counsel in August 2013, over a year before any new habeas petition was filed.  Clark's claim, if new, is time-barred.

\* \* \*

We AFFIRM the district court's judgment denying relief from its prior September 19, 2007 judgment, in which it denied Clark's petition for writ of habeas corpus on the merits.

---

[76] *Clark v. Thaler*, 133 S. Ct. 179 (2012) (mem.).

[77] *See Holland v. Florida*, 560 U.S. 631, 649 (2010) (holding that § 2244(d) is subject to equitable tolling if the petitioner demonstrates "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filling" (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005))).

[78] *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1998).