# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-70024

United States Court of Appeals
Fifth Circuit

**FILED**
November 12, 2018

Lyle W. Cayce
Clerk

TRACY LANE BEATTY,

Petitioner – Appellant,

v.

LORIE DAVIS, DIRECTOR, TEXAS DEPARTMENT OF CRIMINAL
JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION,

Respondent – Appellee.

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:09-CV-225

Before OWEN, ELROD, and HAYNES, Circuit Judges.

PER CURIAM:*

Tracy Lane Beatty requests a certificate of appealability (COA) following the district court's denial of his Rule 60(b)(6) motion to re-open the district court's previous judgment denying habeas relief. We deny the COA because reasonable jurists would not debate the conclusion that the district court did

---

* Pursuant to Fifth Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Fifth Circuit Rule 47.5.4.

## No. 17-70024

not abuse its discretion in deciding that the motion was untimely and lacked the "extraordinary circumstances" that Rule 60(b)(6) relief requires.

### I.

### A.

This case comes to us, after a long history of habeas litigation, as an appeal of a district court's denial of a Rule 60(b) motion[1] and certificate of appealability (COA).  Tracy Lane Beatty was convicted and sentenced to death for the capital murder of his mother, Carolyn Click.  On direct appeal, the Texas Court of Criminal Appeals affirmed his conviction.  *Beatty v. State*, No. AP-75010, 2009 WL 619191 (Tex. Crim. App. Mar. 11, 2009).  While that direct appeal was pending, Beatty, represented by attorney Jeff Haas, filed a state application for writ of habeas corpus.  The state trial court held an evidentiary hearing, entered findings of fact and conclusions of law, and recommended that relief be denied.  The Texas Court of Criminal Appeals adopted the trial court's findings, with some exceptions, and denied Beatty's application.  *Ex parte Beatty*, No. WR-59,939-02, 2009 WL 1272550, at *1 (Tex. Crim. App. May 6, 2009) (per curiam).

Haas continued to represent Beatty in his federal habeas proceedings. In June of 2010, Beatty filed a federal habeas petition raising two issues: (1) an exhausted claim that his trial counsel failed to investigate and present mitigating evidence at the punishment phase[2] (the "punishment-phase claim"); and (2) an unexhausted claim that his trial counsel failed to investigate and present evidence to show that Beatty did not commit a burglary, which was a necessary element of his capital murder conviction (the "guilt-phase claim"). In July of 2013, the district court denied the petition.  In assessing the

---

[1] *See* Fed. R. Civ. P. 60(b).

[2] Beatty brought this claim under *Wiggins v. Smith*, 539 U.S. 510 (2003).

No. 17-70024

unexhausted guilt-phase claim, the district court held that it was procedurally defaulted, even in light of the Supreme Court's newly released decisions in *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 569 U.S. 413 (2013). Those cases provide an exception to the procedural-default rule in cases in which the petitioner makes "a substantial claim of ineffective assistance at trial." *Trevino*, 569 U.S. at 429. But because the district court held that Beatty made no substantial showing that his trial counsel was ineffective, the exception did not apply. *Trevino*, 569 U.S. at 429. Beatty responded to this ruling with a motion for reconsideration, reiterating his claims based on *Trevino*. He also asked for a new attorney on appeal. The district court denied the motion for reconsideration but granted the request for a new attorney on the appeal.

## B.

Thus, on August 30, 2013, Beatty proceeded with Scott Smith as his new attorney. Three months later, Smith sought a COA from this court on both the punishment-phase and guilt-phase claims. *Beatty v. Stephens*, 759 F.3d 455, 461 (5th Cir. 2014). It is helpful to summarize our reasons for rejecting a COA on those issues. We held that the guilt-phase claim was procedurally barred because *Martinez* and *Trevino* did not excuse Beatty's failure to raise it in state court. *Id.* at 465. *Martinez* and *Trevino* excuse these failures only if a petitioner shows: "(1) that his claim of ineffective assistance of counsel at trial is 'substantial' (i.e., 'has some merit'); and (2) that his habeas counsel was ineffective for failing to present those claims in his first state habeas application." *Id.* at 465–66 (quoting *Martinez*, 566 U.S. at 14).

The guilt-phase claim failed to meet either requirement. First, it did not have "some merit." *Martinez*, 566 U.S. at 14. To have merit, an ineffective-assistance-of-trial-counsel (IATC) claim must prove: (1) that counsel's performance was deficient; and (2) that such deficient performance prejudiced

3

the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). We held that the district court's conclusion on the first *Strickland* prong was not debatable. Beatty's IATC argument was this: Trial counsel failed to present available witness testimony establishing how abusive his mother was to him (and to others) and how dysfunctional their relationship had become. *Beatty*, 759 F.3d at 466. Without this evidence, it appeared that Beatty's motive in murdering his mother was to steal her belongings, not because the two had a strained relationship. *Id.* This helped the prosecution establish that Beatty committed burglary in the course of the murder, which in turn established that Beatty had committed *capital* murder. In sum, Beatty claimed that his trial counsel's failure to present the evidence about Beatty's relationship with his mother elevated his conviction from non-capital to capital murder. *Id.* at 466–67.

We held that the trial counsel's failure to introduce this evidence was not deficient under *Strickland* because counsel reasonably decided "to attack the evidence supporting the burglary element"—rather than introducing separate evidence about Beatty's dysfunctional relationship with his mother—because none of the evidence about his mother's personality would be "more mitigating than aggravating." *Id.* at 465, 467. Beatty's trial counsel explained, "from a strategic standpoint, the danger you have in trying to make the victim of a homicide, who is the mother of a defendant, into the reason for her own death, has got to be clear, nearly to the point of a smoking gun." *Id.* at 465. We reached the same conclusion on the district court's analysis of the second *Strickland* prong. It was "unclear how the failure to investigate and present evidence of [his mother]'s personality, behavioral problems, or past abuse of other children prejudiced Beatty at the guilt stage." *Id.* at 468. Because of this *Strickland* analysis, we also held in the alternative that, even assuming *arguendo* that Beatty had not procedurally defaulted the guilt-phase claim, that claim did not warrant a COA. *Id.*

The guilt-phase claim also failed to establish that Beatty's "habeas counsel was ineffective for failing to present those claims in his first state habeas application," which is required to come within *Martinez/Trevino*'s exception to the procedural-default rule. *Id.* at 465–66. We held that the connection between the habeas evidence and the guilt phase of the trial was "neither clear nor strong enough to establish that Beatty's habeas counsel was ineffective for failing to raise this issue." *Id.* at 466.

We also denied a COA on the punishment-phase claim because, while it was not procedurally barred, Beatty did not make "a substantial showing of the denial of a constitutional right," as required for a COA to issue. 28 U.S.C. § 2253(c)(2). On the first *Strickland* prong, we explained that the lead counsel's investigations "did not turn up any witnesses who would have had anything good to say about Beatty or any evidence that was more mitigating than aggravating." *Beatty*, 759 F.3d at 467 (citing *Harrington v. Richter*, 562 U.S. 86, 106–07 (2011)). Hence, the failure to pursue further evidence of his mother's personality did not fall below "an objective standard of reasonableness." *Id.* (quoting *Strickland*, 466 U.S. at 688). On the second *Strickland* prong, we noted that Beatty made "no discrete argument as to why the defense team's alleged failure to investigate mitigating evidence prejudiced Beatty at the punishment phase." *Id.* (citing *Strickland*, 466 U.S. at 695). In light of the "two-edged" nature of the evidence he wanted his trial counsel to introduce, we concluded that there was "no debate over the district court's conclusion that the evidence was not enough to satisfy the prejudice prong for the punishment-phase claim." *Id.*

C.

In August of 2014, Smith filed a petition for panel rehearing and requested a remand to the district court so that he could investigate state habeas counsel's investigation. He argued that the district court's

No. 17-70024

*Martinez/Trevino* review had been tainted because the record was developed by a lawyer laboring under a conflict of interest: Jeff Haas was arguing in the federal proceedings that Jeff Haas was ineffective in the state proceedings. We rejected that argument because Beatty had conflict-free counsel on appeal—Scott Smith—and he failed to explain what his conflict-free counsel would have done differently in the district court. *See* On Petition for Rehearing at 2, *Beatty v. Stephens* (No. 13-70026) (5th Cir. Nov. 3, 2014).

The Supreme Court then decided *Christeson v. Roper*, 135 S. Ct. 891 (2015), and Beatty asked us to recall our mandate in light of that decision. We denied his motion because *Christeson* did not provide him relief. *Christeson* held that "a petitioner was entitled to new counsel to pursue his federal habeas relief because his original counsel would have had to argue his own ineffectiveness." *Beatty v. Stephens*, No. 13-70026, slip op. at 1 (5th Cir. Feb. 26, 2015). But unlike the petitioner in *Christeson*, Beatty "was, and is, represented by indisputably conflict-free counsel in his federal appeal. Moreover, appellate counsel raised the ineffective-assistance-of-counsel claims under *Martinez* . . . which we held did not warrant a COA, assuming arguendo that there was no procedural bar." *Id.* at 1–2. Beatty then petitioned the Supreme Court for certiorari, but that was also denied. *Beatty v. Stephens*, 135 S. Ct. 2312 (2015).

The State set Beatty's execution for August 13, 2015. Seven days before that, Beatty filed another state habeas application with three claims for relief. The Texas Court of Criminal Appeals stayed the execution but ultimately dismissed the application as an abuse of the writ. *Ex parte Beatty*, No. WR-59,939-03, 2015 WL 6442730 (Tex. Crim. App. Oct. 14, 2015).

In October of 2015, twenty-nine months after the Supreme Court issued *Trevino*, Beatty went back to the federal district court to try to get Rule 60(b) relief from its original judgment denying habeas relief. The court denied that

No. 17-70024

motion because it was untimely and Beatty did not show the "extraordinary circumstances" that a Rule 60(b)(6) motion requires. The court also denied a COA. Beatty then filed a motion in the district court to alter or amend the judgment under Rule 59(e). The court denied that motion, too. Beatty now seeks a COA on the district court's denial of Rule 60(b) relief.

## II.

We review COA requests by determining whether "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right, and [whether] jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 478 (2000). Beatty seeks a COA in order to obtain relief under Rule 60(b). "[T]he decision to grant or deny relief under Rule 60(b) lies within the sound discretion of the district court and will be reversed only for an abuse of that discretion." *Hernandez v. Thaler*, 630 F.3d 420, 428 (5th Cir. 2011) (quoting *Rocha v. Thaler*, 619 F.3d 387, 400 (5th Cir. 2010)). Thus, we "must determine whether a jurist of reason could conclude that the district court's denial of [his] motion was an abuse of discretion." *Id.*

## III.

The district court denied Beatty's Rule 60(b) motion and COA application for two reasons. First, it held that Beatty's motion was untimely. Second, it held that, even if it were timely, Beatty failed to establish the "extraordinary circumstances" that Rule 60(b) relief requires. We hold that reasonable jurists would not debate the conclusion that the district court did not abuse its discretion in reaching either holding.

## A.

A Rule 60(b) motion "'must be made within a reasonable time,' unless good cause can be shown for the delay." *In re Edwards*, 865 F.3d 197, 208 (5th Cir. 2017) (quoting Fed. R. Civ. P. 60(c)(1)); *see also Preyor v. Davis*, 704 F.

7

No. 17-70024

App'x 331, 342 (5th Cir. 2017). "'Good cause' for a reasonable delay must be 'evaluated on a case-by-case basis.'" *In re Edwards*, 865 F.3d at 208 (quoting *In re Osborne*, 379 F.3d 277, 283 (5th Cir. 2004)). "The timeliness of the motion is measured as of the point in time when the moving party has grounds to make such a motion, regardless of the time that has elapsed since the entry of judgment." *Id.* (quoting *First RepublicBank Fort Worth v. Norglass, Inc.*, 958 F.2d 117, 120 (5th Cir. 1992)).

In *Clark v. Davis*, we held that the "contention that a conflict of interest may arise when state habeas counsel in Texas is also federal habeas counsel flows from *Trevino*." 850 F.3d 780, 781 (5th Cir. 2017). Hence, the timeliness clock started on May 28, 2013, the date of the *Trevino* decision. Beatty began citing *Trevino* twenty-two days after it issued, but he did so to receive conflict-free counsel for his appeal. Three weeks after he requested conflict-free counsel, he received it and appeared satisfied. *See* Motion for Certificate of Appealability and Brief in Support at 24, *Beatty v. Stephens* (No. 13-70026) (5th Cir. Nov. 22, 2013) (representing that post-conviction counsel's investigation was adequate). The defect that he alleged was removed.

At that time, he could have asked this Court to stay proceedings so that he could return to the district court to file a Rule 60(b) motion. *See, e.g.*, Order Granting Petitioner's Motion to Stay Proceedings Pending the Filing of a Rule 60(b) Motion, *Gamboa v. Davis* (No. 16-70023) (5th Cir. Feb. 13, 2017). He could have asked this court to remand under 18 U.S.C. § 3599 to allow him to challenge state habeas counsel's performance. *See, e.g., Mendoza v. Stephens*, 783 F.3d 203 (5th Cir. 2015); *Speer v. Stephens*, 781 F.3d 784 (5th Cir. 2015). He could have requested remand when he filed his petition for a COA. But he did none of those things. Instead, he represented to this Court that "post-conviction counsel's investigation was adequate." *See* Motion for Certificate of Appealability and Brief in Support at 24, *Beatty v. Stephens* (No. 13-70026)

(5th Cir. Nov. 22, 2013).  Then, fourteen months after the *Trevino* decision, he asked this Court for a remand so that he could investigate his state habeas counsel's performance, presumably to show that it was inadequate.  He finally filed his Rule 60(b)(6) motion, the subject of this appeal, in October of 2015—twenty-nine months after *Trevino* had been issued.

Reasonable jurists would not debate the conclusion that the district court did not abuse its discretion in concluding that this motion is untimely.  In *Clark*, we recognized that the sixteen months between *Trevino* and a Rule 60(b)(6) motion and, alternatively, the twelve months between appointment of conflict-free counsel and a Rule 60(b)(6) motion were both untimely.  *Clark*, 850 F.3d at 782.  We also recognized that courts have denied motions as untimely when filed as few as five months after the starting date.  *See id.* at 782 n. 63 (citing *Treadway v. Parke*, 79 F.3d 1150, 1996 WL 117182, \*1 (7th Cir.) (five months); *Tamayo v. Stephens*, 740 F.3d 986, 991 (5th Cir. 2014) (less than eight months); *Pruett v. Stephens*, 608 F. App'x 182, 185–86 (5th Cir. 2015) (petitioner waited fourteen months after *Trevino* to raise ineffective-assistance claim in state court); *Paredes v. Stephens*, 587 F. App'x 436, 438 (5th Cir. 2014) (three years); *Lewis v. Lewis*, 326 F. App'x 420, 420 (9th Cir. 2009) (mem.) (six months)).  Beatty's twenty-nine month delay is not excused by the fact that his petition for certiorari was pending in the Supreme Court or that his subsequent writ was pending in state court.  He could have made concurrent filings.  *See Clark*, 850 F.3d at 783 (declining to excuse the time during which Clark had pending litigation in state court).  Accordingly, reasonable jurists would not debate the conclusion that the district court did not abuse its discretion in determining that Beatty's twenty-nine month delay was untimely.

No. 17-70024

B.

Even if Beatty's motion were timely, reasonable jurists would not debate the conclusion that the district court did not abuse its discretion by holding that Beatty lacked the "extraordinary circumstances" that a Rule 60(b)(6) motion requires. *See In re Edwards*, 865 F.3d at 203; *Preyor*, 704 F. App'x at 342. We have repeatedly held that "[u]nder our precedents, changes in decisional law . . . do not constitute the 'extraordinary circumstances' required for granting Rule 60(b)(6) relief." *Hess v. Cockrell*, 281 F.3d 212, 216 (5th Cir. 2002). Applying this rule to the very changes in decisional law that Beatty invokes, we have held that a district court does not "abuse[] its discretion in finding that *Martinez*, even in light of *Trevino*, does not create extraordinary circumstances warranting relief from final judgment." *Diaz v. Stephens*, 731 F.3d 370, 376 (5th Cir. 2013); *Adams v. Thaler*, 679 F.3d 312, 320 (5th Cir. 2012). Even in Beatty's past visits to this court, we rejected his arguments based on the *Martinez*/*Trevino*/*Christeson* trilogy: In his initial request for a COA, we rejected his reliance on *Martinez* and *Trevino*. *Beatty*, 759 F.3d at 465–66. When he asked us to recall our mandate on *Christeson* grounds, we rejected that argument, too.[3] *Beatty*, No. 13-70026, slip op. at 1–2.

Knowing this all too well, Beatty tries to shoehorn his case into extraordinary circumstances by supplementing the changes in decisional law

---

[3] Beatty tries to sidestep this problem by claiming that the district court failed to address the relevant change in decisional law: our decisions in *Speer* and *Mendoza*, not the Supreme Court's decisions in *Martinez* and *Trevino*. Beatty claims that *Speer* and *Mendoza* "broke new ground" by establishing the right, upon request, to conflict-free counsel to investigate state habeas counsel's performance. But changes in decisional law, by themselves, do not create "extraordinary circumstances." This argument also misreads those cases. We have explicitly held that "we do not interpret *Martinez* or *Trevino* as creating the right to new or additional counsel." *Speer*, 781 F.3d at 784; *see also Speer*, 781 F.3d at 787 n. 5 ("We also do not interpret . . . *Christeson* . . . as supporting appointment of new or additional counsel."). *Martinez* and *Trevino* are not "extraordinary circumstances," and neither are our precedents that merely apply them.

with "other factors." Specifically, he alleges that: (1) he is the lone petitioner who has not been allowed to return to district court with conflict-free counsel; (2) there are legitimate concerns that he may be innocent; (3) his state habeas counsel admitted error in failing to raise the guilt-phase claim in the state habeas proceedings; and (4) he has been prompt and diligent in asserting his argument for conflict-free counsel.

We reject Beatty's reliance on these "other factors." As a starting matter, just as in *Diaz*, these circumstances "are no more unique or extraordinary than any other capital inmate who defaulted claims in state court prior to *Trevino*." 731 F.3d at 371. And even if they were unique, they would not support Rule 60(b)(6) relief. The first falls short because it is not even correct. *See, e.g.,* Court Order Denying Motion to Appoint Counsel, *Roberson v. Stephens* (No. 14-70033) (5th Cir. May 22, 2015) (finding it sufficient that conflict-free counsel at the appellate level reviewed *Martinez/Trevino* issues). Moreover, *Martinez* and *Trevino* did not create a new right to conflict-free counsel on collateral review; they provide only remedial relief to procedural bars standing in the way of presenting defaulted claims in federal courts. *See Speer*, 781 F.3d at 785.

Beatty's claim of "legitimate concerns" about his innocence is also not enough. To get past the successive-petition bar, Beatty must do more than raise "legitimate concerns": he must establish by clear and convincing evidence that "no reasonable factfinder would have found him guilty of the underlying offense." 28 U.S.C. § 2244(b)(2)(B)(ii). His conclusory argument directs us to no new information other than a Texas Court of Criminal Appeals dissent that would have found that Beatty did not "lack consent" to enter his mother's home on the night of the murder, as required to conclude that he committed a burglary in the course of that murder. This argument fails to satisfy the standard of 28 U.S.C. § 2244.

No. 17-70024

The third of Beatty's factors fails because we already held, in Beatty's first appeal to this Court, that his guilt-phase claim is without merit,[4] so any failure to raise it in state habeas proceedings, confessed or not, was harmless anyway. *Beatty*, 759 F.3d at 465–66. The fourth claim, asserting that he was diligent, is undermined by our timeliness analysis.

Moreover, none of these "other factors" rise to the level of the circumstances in *Buck v. Davis*, such that they would "risk injustice to the parties" or raise "the risk of undermining the public's confidence in the judicial process." 137 S. Ct. 759, 778 (2017). In *Buck*, there was a legitimate concern that "Buck may have been sentenced to death because of his race" due to expert testimony, and the state proactively consented to resentencing in all five other cases that same expert testified in. *Id.* at 778–79. No such concern calling into account the integrity of the initial judicial proceedings in the public's mind is present here. Accordingly, the combination of *Martinez/Trevino*'s change in decisional law and these "other factors" would not allow reasonable jurists to conclude that the district court abused its discretion in determining that Beatty failed to show the "extraordinary circumstances" required for Rule 60(b)(6) relief.

* * *

For these reasons, we DENY Beatty's request for a COA.

---

[4] *See supra* pp. 3–5.