# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 16, 2023

Lyle W. Cayce
Clerk

No. 19-11200

---

Mark Moody,

*Petitioner—Appellant*,

*versus*

Bobby Lumpkin, *Director, Texas Department of Criminal Justice, Correctional Institutions Division*,

*Respondent—Appellee*.

---

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:19-CV-298

---

Before Barksdale, Southwick, and Higginson, *Circuit Judges*.

Rhesa Hawkins Barksdale, *Circuit Judge*:

This appeal calls into play limitations placed on federal habeas review by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. §§ 2241–66, which promotes numerous objectives—most relevant here, finality. The district court denied as untimely Texas state prisoner Mark Moody's 28 U.S.C. § 2254 habeas petition. At hand are the two issues for which our court granted the controlling certificate of appealability, pursuant to 28 U.S.C. § 2253(c): whether there is a constitutional right to counsel in a state postconviction proceeding when it is petitioner's "first

opportunity to raise" an ineffective-assistance-of-trial-counsel claim; and whether the equitable exception to procedural default announced in *Martinez v. Ryan*, 566 U.S. 1 (2012), applies to AEDPA's statute of limitations. AFFIRMED.

## I.

Moody, after waiving his right to appeal in his plea agreement, did not file a direct appeal of his 2015 Texas conviction. His 2017 application for state postconviction relief from that 2015 sentence was denied in 2018. In 2019, he filed this § 2254 petition, which was denied as untimely. Moody contends the Supreme Court's decision in *Martinez*, and its extension in *Trevino v. Thaler*, 569 U.S. 413 (2013), excuse his untimeliness.

## A.

Moody pleaded guilty in October 2015 to the Texas offense of driving while intoxicated and felony repetition, in violation of Texas Penal Code §§ 49.04 (DWI) & 49.09 (enhancement). The indictment included two enhancement paragraphs. The first, titled "felony repetition", stated Moody had two prior *misdemeanor* Texas DWI convictions, in 1994 and 1998. The second paragraph, titled "habitual offender notice", stated he had two prior *felony* Texas DWI convictions, in 1999 (DWI and felony repetition) and 2009 (same).

A third DWI conviction is a third-degree felony in Texas. Tex. Penal Code § 49.09(b). Third-degree felonies typically carry a 10-year maximum sentence. § 12.34. A third-degree felony, however, is punished as a second-degree felony, with a 20-year maximum sentence, if defendant has at least one prior felony conviction. § 12.42(a) (enhancement); § 12.33 (sentence). Finally, a third felony conviction—which applies to any felony convictions, with exceptions not applicable here, not only felony DWI convictions—classifies defendant as a "Habitual Felony Offender" and

carries a sentence of either life or "any term of not more than 99 years or less than 25 years". § 12.42(d).

As part of his guilty plea in October 2015, Moody pleaded true to the first enhancement paragraph (two prior misdemeanor DWI convictions); and he and the State agreed his offense would be treated as a third-degree felony subject to being punished as a second-degree felony pursuant to the § 12.42(a) enhancement discussed above, thus facing a maximum sentence of 20 years. By doing so, Moody avoided facing the habitual-offender enhancement, which he otherwise would have risked because of his two prior felonies and, as stated, carries a 25-year minimum with the possibility of life-imprisonment. His plea also included, *inter alia*, an appeal waiver.

The court on 19 October 2015 accepted his plea and sentenced him to 20-years' imprisonment. Consistent with the appeal waiver, he did not file a direct appeal.

## B.

### 1.

Two years and two months after sentencing, Moody on 21 December 2017 filed a *pro se* habeas application in Texas state court, claiming the following. His 1998 DWI conviction was obtained in violation of his Sixth Amendment right to counsel (incorporated through the Fourteenth Amendment) because he was never offered appointed counsel or informed of his right to counsel, and his waiver of attorney was signed unknowingly, rendering it void. Next, his 1998 conviction was used to enhance his 1999 conviction to a felony, and that 1999 felony conviction, in turn, subjected him to the habitual-offender enhancement in his 2015 indictment (the sentence for which he was serving). He would not have accepted the 2015 plea offer had he not faced the habitual-offender enhancement; and, because his unconstitutional 1998 conviction was used as the basis for seeking that

No. 19-11200

enhancement, he was entitled to relief from his current (2015) sentence. Finally, he had a right to appointed counsel for his postconviction proceeding because it was his first appeal as of right.

The court adopted the State's proposed findings and conclusions, which included, *inter alia*, Moody's failing to provide sufficient evidence and authority in support of his claims. It transmitted the petition to the Court of Criminal Appeals, recommending denial.

### 2.

The Court of Criminal Appeals on 4 April 2018 denied Moody's petition without a written order.

### C.

### 1.

Nearly a year later, on 18 March 2019, Moody filed the 28 U.S.C. § 2254 habeas petition at issue. Proceeding *pro se*, he claimed—as he had in his state proceeding—that his current (2015) sentence was unconstitutional because his 1998 conviction was used to obtain his 2015 guilty plea. Relief was warranted, he contended, because his appointed counsel was ineffective during negotiation of his 2015 plea by failing to contest his unconstitutional 1998 conviction's being used as a basis for enhancement.[1]

---

[1] Regarding the federal habeas petition, we note that, in his state petition, Moody did not explicitly raise, nor did the state court seem to construe his challenge as, an IATC claim. And, because the district court denied the petition based on untimeliness, as discussed further *infra*, it did not reach whether Moody's claims were exhausted. *See* § 2254(b)(1) (providing, subject to exceptions, state prisoner must exhaust state remedies before seeking federal habeas relief); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (exhaustion requires state prisoner "fairly present his claim in each appropriate state court" (citation omitted)). The State reserved the right to raise the exhaustion requirement if Moody's federal petition was deemed timely. *See* § 2254(b)(3) ("A State

No. 19-11200

In support of his ineffective-assistance-of-trial-counsel (IATC) claim, Moody alleged that, after sentencing, he contacted his 2015 counsel with concerns about the voluntariness of his 1998 guilty plea upon discovering the Supreme Court's 1967 decision in *Burgett v. Texas*, 389 U.S. 109, 115 (1967) (holding convictions obtained in violation of *Gideon* may not be used "to support guilt or enhance punishment"). *See generally Gideon v. Wainwright*, 372 U.S. 335 (1963) (holding indigent defendants have constitutional right to appointed counsel in criminal proceedings). Attached to his petition was counsel's response to a letter Moody had written him on 23 October 2015 (just days after the 19 October sentencing). Counsel's response letter, dated 28 October, had not been included in Moody's state habeas petition.[2]

In that response letter, counsel stated he had examined (but without specifying when) the record of the 1998 conviction and saw Moody signed an attorney waiver which appeared to be legitimate. Counsel explained: "[i]f there had been no waiver of counsel in the paperwork, then the conviction would have been void, and subject to collateral attack"; and, if that had been the case, it would have been sound strategy to contest the 2015 indictment by challenging the 1998 conviction.

In that regard, counsel stated the signed waiver imposed on Moody the burden of proving it was involuntary; in other words, the conviction was

_____

shall not be deemed to have waived the exhaustion requirement" unless it "expressly" does so.).

[2] Assuming Moody's federal petition was timely and his IATC claim exhausted, this presents the issue of whether the district court would be barred from considering this letter in examining the merits of his claim. *See Shinn v. Ramirez*, 142 S. Ct. 1718, 1734 (2022) (holding "under § 2254(e)(2), a federal habeas court may not conduct an evidentiary hearing or otherwise consider evidence beyond the state-court record based on ineffective assistance of state postconviction counsel"). Because we affirm based on untimeliness, we need not reach this issue.

No. 19-11200

"not void" but "merely voidable". Counsel further explained that, for the 2015 indictment, Moody "did not want" to risk going to trial "[f]or good and sensible reasons". Rather, he "got the best deal that was actually available and sensibly avoided the risk of . . . getting a sentence of 25 years or more".

The State countered that the petition was barred by AEDPA's one-year statute of limitations, and that the limitations period should not be equitably tolled. As referenced *supra*, it also reserved the right to raise the exhaustion requirement if Moody's petition was deemed timely. *See* § 2254(b)(3).

Moody responded his petition was timely because: (1) his state habeas proceeding was the "first opportunity" to pursue his IATC claim; therefore, that proceeding should be considered his first appeal as of right, for which he was guaranteed the right to counsel; and (2) not having been appointed counsel in the state habeas proceeding, his time to file his federal habeas petition was tolled under the above-cited decision in *Martinez v. Ryan*, 566 U.S. 1 (2012) (holding ineffective assistance in initial-review collateral proceedings can constitute sufficient cause to excuse procedural default). Alternatively, he contended: (1) the one-year AEDPA limitations period did not begin to run until the Court of Criminal Appeals denied his state petition on 4 April 2018; therefore, his 18 March 2019 filing was timely, *see* 28 U.S.C. § 2244(d) (limitations period); and (2) his 2015 counsel's "egregious misconduct" warranted equitable tolling.

The district court rejected Moody's contention that the limitations period did not begin to run until his state petition was denied. It concluded the one-year period began 18 November 2015 because that was the date the time to file a direct appeal expired, therefore the time his conviction became "final". *See* § 2244(d) (providing limitations period commences from the latest of, *inter alia*, "date on which the judgment became final by the

conclusion of direct review or the expiration of the time for seeking such review"). Accordingly, the court provided that, "absent any tolling", Moody's time to file expired 17 November 2016, rendering untimely his 18 March 2019 filing in district court. (Moody does not challenge that final-judgment date in our court.)

Regarding tolling, the court first concluded Moody was ineligible for statutory tolling pursuant to § 2244(d)(2) ("properly filed" state habeas application tolls AEDPA's limitations period) because the one-year limitations period that began on 18 November 2015 (when conviction became final) had already expired when he filed his state petition on 21 December 2017. Second, equitable tolling was not warranted because Moody could have discovered the Court's 1967 *Burgett* decision "and raised his *Gideon* claim in a timely-filed federal petition", had he proceeded with reasonable diligence. Finally, *Martinez* was inapplicable because that decision concerns cause for excusing procedural default; it does not apply to AEDPA's limitations period.

Accordingly, the court denied Moody's petition as untimely. It contemporaneously denied a certificate of appealability (COA). Judgment was entered on 2 October 2019, and Moody filed a notice of appeal on 29 October.

### 2.

In our court, Moody moved *pro se* for a COA, reasserting, and elaborating on, the contentions he made in district court.

The requested COA was denied for his equitable-tolling and constructive-denial-of-counsel issues. *See United States v. Cronic*, 466 U.S. 648, 659 (1984) (holding defendant is constructively denied counsel during critical stage of criminal proceedings where counsel, *inter alia*, "fails to subject the prosecution's case to meaningful adversarial testing").

No. 19-11200

On the other hand, a COA was granted for his "*Strickland* [*v. Washington*, 466 U.S. 668 (1984)] IATC claim and the issues of (1) whether there is an exception to the constitutional rule that the right to counsel does not apply to postconviction proceedings in cases where postconviction proceedings are the first opportunity to raise an IATC claim and (2) whether *Martinez* applies to statute-of-limitations issues under AEDPA". Our court also appointed Moody counsel. Because, as discussed *infra*, his petition is untimely, we do not reach Moody's IATC claim, including the exhaustion issue referenced *supra*.

## II.

Congress intended that AEDPA "further the principles of comity, finality, and federalism" and "curb the abuse of the statutory writ of habeas corpus". *Wallace v. Mississippi*, 43 F.4th 482, 492 (5th Cir. 2022) (first quoting *Williams v. Taylor*, 529 U.S. 420, 436 (2000); and then quoting *Graham v. Johnson*, 168 F.3d 762, 780 (5th Cir. 1999)). Along that line, our review is limited to the issues specified in the COA, which Moody has not moved to expand. *E.g.*, *Simmons v. Epps*, 654 F.3d 526, 535 (5th Cir. 2011); *Lackey v. Johnson*, 116 F.3d 149, 151–52 (5th Cir. 1997).

In considering the issues allowed by the COA, we review "the district court's findings of fact for clear error and its conclusions of law de novo". *Harrison v. Quarterman*, 496 F.3d 419, 423 (5th Cir. 2007). Under AEDPA, a federal court may grant a state prisoner's habeas petition "if his incarceration was the product of a state court adjudication that: '(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court . . . ; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding'".

No. 19-11200

*Richardson v. Quarterman*, 537 F.3d 466, 472 (5th Cir. 2008) (quoting 28 U.S.C. § 2254(d)).

## A.

Moody, relying primarily on Justice Scalia's dissent in *Martinez*, contends that decision established a limited right to counsel in state postconviction proceedings when those proceedings are a prisoner's first opportunity to pursue an IATC claim (sometimes referred to as initial-review collateral proceedings). *See Martinez*, 566 U.S. at 18–19 (Scalia, J., dissenting) ("[T]he Court, in what it portrays as an admirable exercise of judicial restraint, abstains from holding that there is a constitutional right to counsel in initial-review state habeas. . . . Instead of taking that radical step, the Court holds that, for equitable reasons, in a case such as the one before us, failing to provide assistance of counsel, or providing assistance of counsel that falls below the *Strickland* standard, constitutes cause for excusing procedural default. The result, of course, is precisely the same". (emphasis omitted)). Moody claims, relying on the earlier-referenced decision in *Trevino v. Thaler*, 569 U.S. 413 (2013), that his state habeas proceeding was his first opportunity to pursue his IATC claim. *See id.* at 428–29 (providing Texas law "does not offer most defendants a meaningful opportunity to present" an IATC claim). Therefore, Moody contends: he had a right under *Martinez* to appointed counsel for that state habeas proceeding; and, because he was not appointed counsel, his untimeliness should be excused.

The State counters in numerous ways, most notably: *Martinez* did not establish a limited constitutional right to counsel in postconviction proceedings; and adopting Moody's proposed exception would conflict with AEDPA's objective of furthering finality, comity, and federalism.

Prior to *Martinez*, the Court long held no constitutional right to counsel exists in discretionary appeals or collateral attacks on convictions.

*E.g.*, *Lawrence v. Florida*, 549 U.S. 327, 336–37 (2007); *Coleman v. Thompson*, 501 U.S. 722, 752 (1991); *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987); *Ross v. Moffitt*, 417 U.S. 600, 610 (1974); *Johnson v. Avery*, 393 U.S. 483, 488 (1969). And this court, of course, followed suit. *E.g.*, *Matchett v. Dretke*, 380 F.3d 844, 849 (5th Cir. 2004); *In re Goff*, 250 F.3d 273, 275–76 (5th Cir. 2001); *Irving v. Hargett*, 59 F.3d 23, 26 (5th Cir. 1995); *Abraham v. Wainwright*, 407 F.2d 826, 828 (5th Cir. 1969).

Included in the above-cited examples, the Court in *Coleman*, around 20 years before *Martinez*, considered whether attorney error could constitute sufficient cause to excuse procedural default where the attorney failed to present a claim in state court. *Coleman*, 501 U.S. at 752–55. The procedural-default doctrine bars federal courts from reviewing habeas claims which were denied by a state court pursuant to an independent and adequate state procedural rule. *E.g.*, *id.* at 729–32, 750. This rule is not jurisdictional, but rather rooted in principles of federalism and comity; therefore, a prisoner's defaulted claim may be considered if he shows sufficient cause. *Id.*

*Coleman* held "counsel's ineffectiveness will constitute cause only if it is an independent constitutional violation". *Id.* at 755. The Court refused to excuse Coleman's default because a prisoner has no constitutional right to an attorney in collateral proceedings; therefore, he bears the risk that attorney error will result in procedural default, and there is no independent constitutional violation when default occurs. *Id.* at 752–57.

In reaching that holding, the Court acknowledged that, for Coleman's proposed showing of cause to prevail, the general rule that there is not a right to counsel in collateral proceedings would have to have "an exception . . . in those cases where state collateral review is the first place a prisoner can present a challenge to his conviction". *Id.* at 755. The Court left that question open because "one state court [had already] addressed Coleman's

claims"; therefore, he had a prior opportunity to present his challenges, so it was enough that he did not have the right to counsel during his collateral proceedings. *Id.*

This left-open question resurfaced in *Martinez*. Martinez' state postconviction petition was dismissed according to state procedural rules. *Martinez*, 566 U.S. at 7. He claimed: his "state collateral proceeding was the first place to challenge his conviction on grounds of ineffective assistance"; therefore, "he had a constitutional right to an effective attorney in the collateral proceeding"; and, because his postconviction counsel was ineffective, causing his default, he had sufficient cause to excuse that default. *Id.* at 4, 7–8.

At the outset, the Court noted that, although Martinez framed his challenge as "a constitutional one", the question before it was "more narrow": "whether a federal habeas court may excuse a procedural default of an [IATC] claim when the claim was not properly presented in state court due to an attorney's errors in an initial-review collateral proceeding". *Id.* at 5. Later, the Court recognized the question left open in *Coleman* regarding a hypothetical right to counsel in these proceedings, but stated it was "not the case" to resolve that question. *Id.* at 8.

The Court held: "Where, under state law, [IATC claims] *must* be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of [IATC] if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective". *Id.* at 17 (emphasis added). It clarified numerous times its holding was a narrow, equitable one, applicable only to procedural default, and not a constitutional ruling. *E.g.*, *id.* at 4, 8, 16.

Soon after that decision, the Court extended the *Martinez* procedural-default exception to criminal systems like Texas', where state law makes it

"virtually impossible" to pursue an IATC claim on direct review (as opposed to outright forcing IATC claims to be brought in collateral proceedings through procedural rules, as at issue in *Martinez*). *Trevino*, 569 U.S. at 423–24, 428.

We agree with the State that *Martinez* and *Trevino* had no effect on the long-established rule that there is no constitutional right to counsel in postconviction proceedings. The Court has reaffirmed that rule post-*Martinez*. *E.g.*, *Shinn v. Ramirez*, 142 S. Ct. 1718, 1737 (2022) ("[I]n *Coleman*, we reiterated that counsel's ineffectiveness will constitute cause only if it is an independent constitutional violation, and surmised that a hypothetical constitutional right to initial-review postconviction counsel could give rise to a corresponding claim for cause. Since then, however, we have repeatedly reaffirmed that there is no constitutional right to counsel in state postconviction proceedings". (citations omitted)); *Garza v. Idaho*, 139 S. Ct. 738, 749 (2019) ("There is no right to counsel in postconviction proceedings . . . ."); *Davila v. Davis*, 137 S. Ct. 2058, 2068 (2017) ("[W]e have never held that the Constitution guarantees a right to counsel" during postconviction review.).

And, other courts, including ours, have rejected that *Martinez* or *Trevino* established any constitutional rules and have emphasized that the narrow exceptions announced in those decisions apply only to excusing procedural default under those particular facts. *E.g.*, *In re Hensley*, 836 F.3d 504, 507 (5th Cir. 2016) ("*Martinez* recognized a narrow, equitable exception to the procedural default doctrine . . . . That decision did not establish a new rule of constitutional law". (citation omitted)); *In re Paredes*, 587 F. App'x 805, 813 (5th Cir. 2014); *Adams v. Thaler*, 679 F.3d 312, 322 n.6 (5th Cir. 2012) ("*Martinez* . . . was an equitable ruling that did not establish a new rule of constitutional law". (citation omitted)); *see also Ramirez*, 142 S. Ct. at 1737 ("*Martinez* foreclosed any extension of its holding beyond the narrow

exception to procedural default at issue in that case." (citation omitted)); *Davila*, 137 S. Ct. at 2065–66 ("*Martinez* provides no support for extending its narrow exception. . . . In all but those limited circumstances, *Martinez* made clear that the rule of *Coleman* governs". (citations omitted)); *Bluemel v. Bigelow*, 613 F. App'x 698, 699 (10th Cir. 2015); *Chavez v. Sec'y, Fla. Dep't of Corr.*, 742 F.3d 940, 946 (11th Cir. 2014); *Jones v. Ryan*, 733 F.3d 825, 843 (9th Cir. 2013); *Pagan-San Miguel v. United States*, 736 F.3d 44, 45 (1st Cir. 2013).

In short, Moody did not have a constitutional right to counsel in his state postconviction proceeding. Accordingly, we turn to the second issue granted by the COA: whether the *Martinez* exception extends to AEDPA's limitation period.

## B.

Moody's position regarding this second issue is unclear. He, as discussed *supra*, contends *Martinez* established a limited right to counsel in initial-review collateral proceedings. He maintains denying him that right is an "extreme malfunction" of the criminal justice system which habeas relief is designed to remedy. He does not elaborate, however, on whether the procedural-default exception announced in *Martinez* extends to AEDPA's limitations period.

The State primarily emphasizes the narrowness of *Martinez*, claiming its holding applies only to procedural default, and pointing to other courts that have held as much.

The Court in *Martinez* "was unusually explicit about the narrowness of [its] decision", and it "foreclosed any extension of its holding beyond the narrow exception to procedural default at issue in that case". *Ramirez*, 142 S. Ct. at 1737 (citation omitted).

No. 19-11200

Several circuits have considered this issue and held *Martinez* inapplicable to AEDPA's limitations period, albeit some in nonprecedential opinions. *See, e.g.*, *Lombardo v. United States*, 860 F.3d 547, 557 (7th Cir. 2017); *Arthur v. Thomas*, 739 F.3d 611, 630 (11th Cir. 2014); *see also United States v. Robinson*, 762 F. App'x 571, 576–77 (10th Cir. 2019); *Taylor v. Eppinger*, No. 16-4227, 2017 WL 5125666, at *2 (6th Cir. 2 June 2017) (unpublished); *Bland v. Superintendent Greene SCI*, No. 16-3457, 2017 WL 3897066, at *1 (3d Cir. 5 Jan. 2017) (unpublished).

We join those circuits. *Martinez* established a narrow, equitable exception to procedural default; it has no applicability to the statutory limitations period prescribed by AEDPA.

III.

For the foregoing reasons, the judgment is AFFIRMED.